218 Cal.App.3d 787 (1990)
267 Cal. Rptr. 269
In re PHOENIX B., a Person Coming under the Juvenile Court Law.
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
HEATHER L., Defendant and Appellant.
Docket No. A044177.
Court of Appeals of California, First District, Division Four.
March 9, 1990.
*789 COUNSEL
Ande Thomas for Defendant and Appellant.
Louise Renne, City Attorney, Julia Ten Eyck, Deputy City Attorney, and Howard J. Specter for Plaintiff and Respondent.
OPINION
ANDERSON, P.J.
Defendant Heather L. (appellant) appeals the dismissal of a dependency proceeding after the department of social services (Department) filed a petition pursuant to former Welfare and Institutions Code[1] section 300. We affirm.

I. FACTUAL BACKGROUND
Appellant is the natural mother of Phoenix B., born January 26, 1988. On June 1, 1988, appellant was hospitalized involuntarily at San Francisco General Hospital after suffering a mental breakdown. Two days later the *790 Department took custody of her daughter and on June 7 it filed a petition pursuant to former section 300, subdivision (a),[2] seeking to have Phoenix declared a dependent of the juvenile court. The petition alleged jurisdiction on the basis of appellant's hospitalization and illness as well as lack of knowledge about the father's ability to care for Phoenix.
At the detention hearing the next day the court ordered Phoenix detained with a right to release granted to the Department, and continued the matter until the end of the month. Appellant, apparently still hospitalized, was not present. (1) (See fn. 3.) Meanwhile, Phoenix's father, Robert K.,[3] came forward, and on June 9 the Department released Phoenix to his care, indicating that he "appeared to be able and willing to care for the minor." The hospital released appellant the next day. The court appointed counsel for appellant on June 16.
On June 26 the Department moved to dismiss the dependency petition, noting that appellant intended to seek custody of the child, and suggesting that the appropriate forum for resolving the matter was in "Family Court." By then Robert had moved with Phoenix to his parents' home in Illinois.
Appellant opposed the dismissal action. The court denied the motion to dismiss, but later granted rehearing upon Robert's request. Thereafter Gloria Taylor, the assigned child welfare worker, filed a dismissal report summarizing the "current situation." Therein she related a telephone conversation with Dr. Justin, appellant's therapist, in which Dr. Justin reported that *791 appellant was having difficulty dealing with why she was in therapy and needed to continue therapy. In Dr. Justin's opinion, if Phoenix were returned to appellant, appellant should be closely supervised and would need to complete parent education classes.
Ms. Taylor also reported that she supervised telephone calls between appellant and Robert during which appellant asked "inappropriate" questions about Phoenix. Ms. Taylor was also of the opinion that appellant was in a denial phase concerning why she was in therapy and was unwilling to consider placement with Robert simply because she was angry with him. In fact, Robert reported that he initially left the state because appellant threatened him, charges which she denied.
As to Robert, Ms. Taylor related he "has been very appropriate." He sent medical information upon request, agreed to forward pictures if requested, and indicated he did not want to deny appellant information about her daughter. He expressed a desire to provide Phoenix with stability until her mother recovered.
This time the court dismissed the section 300 petition, but urged that the parties take the matter "to the Family Court." This appeal followed.

II. DISCUSSION
On appeal appellant maintains that dismissal of the juvenile proceedings deprived her of custody of her daughter without due process of law, without notice or a hearing, without the court's assuming jurisdiction of Phoenix, without verifying Robert's paternity, and without complying with statutory requirements for removing a child from a custodial parent.

A. Pertinent Statutory Provisions

Section 305 permits a peace officer to take a minor into temporary custody, without a warrant, when the officer has reasonable cause to believe (1) the minor is a person subject to juvenile court jurisdiction (i.e., is described by any provision of § 300) and (2) has certain immediate needs or faces certain immediate dangers or threats. Thereafter the probation officer must immediately investigate the circumstances surrounding the assertion of temporary custody, and must release the minor to the custody of his or her parent, guardian or responsible relative unless certain conditions exist.[4] *792 (§ 309.) If the child is not released, the court must hold a detention hearing to determine whether further detention is appropriate. (§ 315.)
Once a minor is adjudged a dependent, the law provides that the child cannot be taken from the physical custody of his or her parents with whom the child resided at the time proceedings commenced unless the juvenile court finds, by clear and convincing evidence, that certain enumerated detrimental circumstances exist. (§ 361, subd. (b).) Section 361.2 establishes the procedures the court must follow for placing a dependent child with a noncustodial parent or other relative or caretaker following removal from the custodial parent pursuant to section 361.

B. Dismissal Was Proper Here

(2) Appellant first argues that the Department improperly released Phoenix to Robert's custody because he was likely to flee the jurisdiction of the court (§ 309, subd. (a) (3)), and further contends the Department did not comply with the requirements and procedures set forth in sections 361 and 361.2 governing removal of a child from a parent's physical custody.
First, as the trial court correctly pointed out, Robert "left" the jurisdiction, he did not "flee." And he did so with the Department's permission.
Second, sections 361 and 361.2 do not bear on this case because the court declined to assert dependency jurisdiction over Phoenix. The Department detained Phoenix because of her mother's psychiatric commitment. It then investigated Phoenix's immediate circumstances and discovered that her father was willing and able to provide for her care. At that point the Department was duty bound under section 309 to release Phoenix to her father's care because the conditions warranting further detention no longer existed. Further, there was no court order awarding appellant sole physical or legal custody of Phoenix. Thus, being a presumed father (see fn. 3, supra), Robert was equally entitled to custody of Phoenix under Civil Code section 197. This section provides that the father of an unmarried minor child is equally entitled to the custody, services and earnings of the child "if presumed to be the father under subdivision (a) of Section 7004...."

C. The Trial Court Did Not Abuse Its Discretion in Dismissing the Petition

(3) Appellant nonetheless asserts the court abused its discretion in dismissing the petition, arguing that dependency may be sustained even when there is only one offending parent. This is true if the Department can still *793 make a prima facie case under section 300 when only one parent has created the conditions suggesting the need for dependency proceedings.
In the case of In re La Shonda B. (1979) 95 Cal. App.3d 593, 599-600 [157 Cal. Rptr. 280], which appellant cites, the dependency petition alleged the minor was a child described in former section 300, subdivisions (a) and (d).[5] The reviewing court held that these operative provisions, coupled with certain statutory presumptions as to need of proper and effective parental care, neglect, cruelty and physical abuse, allowed the state to establish its case where the minor had been neglected or abused by either parent. "As a result, where there are two parents with separate homes, the child can be removed from the home of the unfit parent at the adjudication hearing without prejudicing the other parent's right to gain custody of the child at the disposition hearing upon a sufficient showing that he or she is capable of providing proper parental care." (Id., at p. 600.)
And in the recent case of In re V.M. (1987) 190 Cal. App.3d 753, 757 [235 Cal. Rptr. 506], the Court of Appeal emphasized that imposition of juvenile dependency jurisdiction depends on the child's welfare, not the fault or lack of fault of the parent. Thus, where the child's welfare warrants dependency and the required jurisdictional findings can be sustained, courts will go forward with the proceedings even where there is an "innocent" parent. This dynamic is readily understood under the facts of a case such as V.M., where the minor children were declared dependents because they had been sexually molested by one parent/step-parent and the court expressed concern that the molester might return to live with the family in the future, thus jeopardizing the minors' welfare.
In the present case the juvenile court did not indicate any concern about Robert's ability to care for Phoenix, nor do we, from the record, uncover any evidence which leads us to think Phoenix's welfare was endangered by placing her with her father. To the contrary, the record supports the Department's decision to dismiss dependency proceedings because Robert was providing appropriate care and, thus, there was no basis for assuming dependency jurisdiction. In the dismissal report, Ms. Taylor stated Robert had "been very appropriate" and wrote: "That our concern was to have the child in a stable environment, that the child is getting the basic care: health, adequate food, shelter, and at this time, that we have no reason not to have the child placed with the more stable parent who is the father."
In any temporary custody and detention proceeding pursuant to section 305 et seq., concern for the child's immediate welfare and care is *794 paramount. When the Department, through investigation, satisfies itself that conditions no longer warrant continued detention, it must relinquish custody of the child to his or her parent, guardian, or other responsible relative. This the Department did when it located Phoenix's father, determined he was able and willing to care for her, and then moved to terminate the dependency action.
Under these circumstances the court properly exercised its discretion to dismiss the petition.

D. No One Has Taken Custody of Phoenix From Appellant

(4) Appellant persists in her belief that the juvenile court erred in dismissing the dependency petition because that disposition effectively gave sole physical custody of Phoenix to Robert who removed her from the state and then refused contact with the mother. First, we note that the evidence does not support the "no contact" argument. Robert moved out of state with the Department's permission; according to him, the move was prompted by threats from appellant. And, although appellant stated in her July 15, 1988, declaration that her telephone calls to Illinois were not returned, since that time Ms. Taylor supervised three telephone calls between appellant and Robert regarding their daughter. Further, Robert has offered to send pictures or references if requested, and has stated he does not want to deny appellant information about Phoenix.
Finally, we point out that appellant has not been deprived of custody without due process of law because no court has taken away her custody rights. Despite the fact that Robert currently has physical custody of Phoenix, under California law appellant still shares custody co-equally with him. (Civ. Code, § 197.) There has never been any court order terminating her right to custody, or awarding Robert sole legal or physical custody. Rather, because of the events surrounding her hospitalization and illness, the Department found it necessary to intervene in Phoenix's life, temporarily detain her, and then release her to the parent best able to care for her at the time.
While technically there has been no legal custody determination, the practical fallout from these events is that appellant's ability to maintain her relationship with her daughter has been severely hampered: Phoenix no longer lives with appellant, and is not even in California. (5) However, since the juvenile court does not have jurisdiction to resolve custody disputes concerning nondependent children, it properly dismissed the petition. It was up to the parties to seek judicial resolution of the matter. At this juncture, as the juvenile court properly advised, appellant's remedy is to *795 assert her custody rights in a family law proceeding in superior court. At each step in these proceedings the parties and/or the court have encouraged appellant to pursue such an action; we join their entreaty.[6]
The judgment is affirmed.
Poche, J., and Perley, J., concurred.
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.
[2] Section 300 sets forth the various circumstances which operate to bring a minor within the jurisdiction, and subject to being a dependent child, of the juvenile court. Former section 300, in effect at the time of the present proceedings (repealed Stats. 1987, ch. 1485, § 3), provided in relevant part as follows: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: [¶] (a) Who is in need of proper and effective parental care or control and has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control...."
[3] Robert and appellant never married. Appellant points out that the Department never verified Robert's paternity. This is true, but appellant has never formally contested paternity; she merely complains there has been no "proof." In fact Robert apparently indicated he was prepared to give proof of paternity at the detention hearing.

The law presumes a man is the natural father of a child if "He receives the child into his home and openly holds out the child as his natural child." (Civ. Code, § 7004, subd. (a)(4).) This is a rebuttable presumption affecting the burden of proof which may be rebutted "in an appropriate action only by clear and convincing evidence." (Civ. Code, § 7004, subd. (b).) The record here supports application of the presumption. It indicates that Robert came forward when the Department instituted dependency proceedings, offered to care for his daughter, took her into his home and, indeed, has held her out as his child. We note the presumption applies even though the existence of a father-child relationship has not been determined in a legal proceeding. (People v. Johnson (1984) 151 Cal. App.3d 1021, 1025 [199 Cal. Rptr. 231].)
[4] Among these conditions is the likelihood that a parent will flee the jurisdiction of the court. (§ 309, subd. (a)(3).)
[5] This subdivision read as follows: "(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."
[6] Because Phoenix has resided in Illinois with her father since January 1988, Illinois is now the "home state" for purposes of the Uniform Child Custody Jurisdiction Act (Act). (Civ. Code, § 5150 et seq.) (The Act defines "home state" as "the state in which the child immediately preceding the time involved lived with ... a parent ... for at least six consecutive months...." (Civ. Code, § 5151, subd. (5).) If appellant decides to pursue the custody matter in California, she will have to establish conditions which satisfy one of the three remaining jurisdictional tests under the Act for the exercise of initial custody jurisdiction. (Civ. Code, § 5152.)