38 Cal.App.4th 1813 (1995)
46 Cal. Rptr.2d 198
In re MARQUIS D. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
RODNEY D., Defendant and Appellant.
Docket No. D023165.
Court of Appeals of California, Fourth District, Division One.
October 16, 1995.
*1816 COUNSEL
Susan Bookout, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd M. Harmon, Jr., County Counsel, Susan Strom and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.
David H. Askey, under appointment by the Court of Appeal, for Minors.
OPINION
KREMER, P.J.
Rodney D. appeals from orders issued at the dispositional hearing of a dependency proceeding denying him placement of his six children. In this opinion, we conclude the court failed to apply Welfare and Institutions Code[1] section 361.2, subdivisions (a) and (b), the proper statutory provision to determine whether the children should have been placed with Rodney. We further decline to imply a finding of detriment required under section 361.2. Finally, we conclude such a finding must be supported by clear and convincing evidence.

BACKGROUND
Between October 1987 and February 1994, Angela A. (Angela or the mother) and Rodney D. (Rodney or the father) had six children: Marquis, *1817 Olar, Elijah, Dachuray, Connie, and Sonja.[2] Angela and Rodney lived together off and on with the longest period of cohabitation being three months. Although Angela primarily cared for the children, Rodney maintained regular contact and visitation with them. Angela developed a long history of referrals to child protective services for child rearing problems.
On December 1, 1994, six-year-old Olar was discovered by school personnel to have a burn on the back of her left hand the "size of a coffee cup." Olar reported her mother had burned her with boiling water after the mother became angry. Olar was taken to the burn unit at University of California, San Diego Hospital where she was hospitalized for four days. The examining physician diagnosed the burn as a "partial thickness"[3] burn and determined it to be "non-accidental." Angela denied she had burned Olar and claimed Olar had burned herself accidentally. Seven-year-old Marquis, who witnessed the incident, told both his father and a social worker that Angela had held Olar's hand under the hot water while it was running.
When Olar was burned Rodney lived with his parents out of the children's home. The day after Olar had been taken to the hospital and Marquis had told his father Angela was responsible, Rodney went to school and talked to Marquis. Marquis told his father Angela had choked him when she found out he had "told" on her. Rodney took Marquis home with him to prevent further retribution. The police and a social worker assisted Rodney in removing the four remaining children from Angela's care and moving them to Rodney and his parents' home. Upon her release from the hospital, Olar joined the other children in her father's home where they have remained.
The San Diego County Department of Social Services (the Department) filed a petition on behalf of Olar pursuant to section 300, subdivision (a) alleging Olar had suffered serious physical harm inflicted nonaccidentally by her mother. Petitions were filed on behalf of the other children pursuant to section 300, subdivision (j) alleging they were at substantial risk of suffering serious nonaccidental physical harm based on the abuse suffered by their sister.
In the report prepared for the detention hearing the social worker reported Rodney evidenced "strong concern" for his children and wanted to have the *1818 children with him. The report stated Rodney was having a difficult time taking over the role of a single parent to six children and that Rodney believed counseling for everyone including himself was needed. Rodney reported Angela had allowed the children to do whatever they had wanted until the situation got out of hand at which time she would intervene with physical discipline. Rodney opposed physical discipline and it was difficult for Rodney to get the children to respond.
At the detention hearing, the court found a prima facie showing had been made that the minors were persons described in section 300 and that the initial removal was necessary due to the substantial danger to the children's physical health. The court ordered the children detained with their father with supervised visitation with the mother.
In the social study prepared for the January 4, 1995, jurisdictional hearing, the social worker reported the children and father were doing well. Rodney was receiving support and help from his parents in coping with the responsibilities of fatherhood with the grandparents participating in the children's care. The social worker reported Rodney was "cooperative" and "receptive to services" and went to all appointments scheduled for him.
All of the children appeared healthy, with Olar's burn healing. Olar had had her follow-up medical visits and treatment was being administered. The social worker reported Marquis, Olar, and Dachuray were happy and preferred living with their father while Elijah reported it was "okay" living with his father but that he wanted to live with his mother. The social worker found the children were well taken care of by their father and paternal grandparents and that they had been given structure and routine. The children were visiting regularly with their mother. The social worker recommended the children stay with their father and further recommended a maintenance plan for Rodney and a reunification plan for Angela.
The social worker reported interviewing a police detective who was conducting a criminal investigation of the burn incident. An additional information report was later submitted along with a copy of the police investigative report. The reporting detective requested Angela be charged with violation of Penal Code section 273d, infliction of corporal punishment resulting in a traumatic condition.
At the jurisdictional hearing on February 6, 1995, Angela pled nolo contendere and Rodney submitted to the allegations of the petitions. The court sustained the petitions and set the matter over for disposition.
On March 10, 1995, the day of the dispositional hearing, the social worker filed an additional information report informing the court that Rodney had *1819 reported he and the children had been spending time with the mother at her place, sometimes overnight. The social worker reported one incident in which Rodney had left Sonja and Connie alone with Angela. The social worker reported he had advised Rodney to let the children see their attorney. Rodney reportedly was concerned the children would be asked questions that might be damaging to Angela in the criminal proceedings. Rodney also reportedly asked to have in-home parenting aid and counseling services stopped since he did not have time for them. Marquis and Olar also reportedly missed an appointment with a therapist. The social worker recommended the children's continued detention with their father and unsupervised visitation for Angela once she completed parenting class.
At the dispositional hearing, Rodney's counsel explained that Rodney had not said he did not want the children talking to their attorney because they might be asked questions damaging to Angela in the criminal proceedings but because he did not want the children to know there were criminal proceedings against their mother for which they might feel responsible. As to the in-home parenting and counseling services, the attorney explained it was difficult to make any progress with all the children interrupting. Rodney instead wanted to take an outside parenting class without the children present. The attorney also claimed Rodney had not missed any appointments but that he had made an appointment with a therapist for the two children but the therapist turned out not to counsel children. The therapist had suggested he get a new referral. As to leaving the children with Angela, Rodney claimed he had a mistaken understanding of the terms of Angela's visitation. He now understood he could not leave any of the children alone with her.
Rodney's counsel argued the court could not remove custody from Rodney because Rodney had nothing to do with the allegations that brought the children before the court and there was nothing to show Rodney presented a substantial risk of harm to the children justifying removal from his care. Counsel went on to state that the Department was recommending "detention" with Rodney but that the "court [was] aware there's really no such thing as detention and it's just a fix that we engage in." The court responded:
"I'd appreciate if counsel got off this detention business. I hear it all the time.... They call it a visitation up in Los Angeles. They call it a detention down here.
".... .... .... .... .... .... ....
"... I just keep hearing the issue of detention. It gets kind of tiresome?"
Counsel responded that nevertheless removal has serious impact from the parents' point of view since a year later it could result in a permanent plan.
*1820 The court declared the children dependents of the juvenile court, removed custody from the parents pursuant to section 361, subdivision (b), and placed the care, custody, control, and conduct of the children in the Department for suitable placement pursuant to section 361.2, subdivision (d).[4] The court further "placed" the children in licensed foster home care and ordered them "detained" with Rodney pending placement.
Rodney timely appealed the court's dispositional orders.

DISCUSSION
Section 361.2[5] establishes the procedures a court must follow for placing a dependent child following removal from the custodial parent pursuant to section 361.[6] (In re Phoenix B. (1990) 218 Cal. App.3d 787, 792 [267 Cal. Rptr. 269].) Subdivision (a) of section 361.2 provides that when a court *1821 orders removal of a minor under section 361, the court "shall first determine" whether there is a parent who wants to assume custody who was not residing with the minor at the time the events that brought the minor within the provisions of section 300 occurred. (§ 361.2, subd. (a).) If that parent requests custody, the court "shall place" the child with the parent unless "it finds that placement with that parent would be detrimental to the minor." (Ibid.) If the court places the child with that parent it may either: (1) order that the parent become legal and physical custodian of the child and terminate jurisdiction; or (2) order that the parent assume custody subject to the supervision of the juvenile court with services provided to either one or both of the parents. (§ 361.2, subd. (b).) The court is specifically required to make either written or oral findings setting forth its basis for its determinations under subdivisions (a) and (b). (§ 361.2, subd. (c).) If the minor is not placed with a noncustodial parent requesting custody, the court orders "the care, custody, control, and conduct of the minor to be under the supervision of the probation officer" who may place the minor in any of several placements including a licensed foster family home. (§ 361.2, subd. (d)(4); see In re Robert A. (1992) 4 Cal. App.4th 174, 182-183 [5 Cal. Rptr.2d 438].)
Rodney contends the court erred by failing to place the children with him pursuant to section 361.2, subdivisions (a) and (b). He argues the court was either unaware of its obligation under subdivisions (a) and (b), or determined that placement with him would be detrimental to the children without making the required findings under subdivision (c). In either event, he contends the court erred as there was no evidence that warranted removing his children from his custody.
The Department acknowledges that the court mistakenly removed custody from Rodney pursuant to section 361, subdivision (b)(1). Because the father was a noncustodial parent, the Department concedes the applicable statute was section 361.2, rather than section 361, subdivision (b). The Department further concedes there was no express finding of detriment under section 361.2, subdivision (a) and that the court did not articulate the basis for its order denying Rodney placement. It however contends such a finding may be implied and is supported by substantial evidence.

*1822 The Importance of Placement Versus Detention

From the discussion between the court and Rodney's counsel at the dispositional hearing, it appears the juvenile court is engaging in some form of ongoing "detention" practice. In its brief the Department explains that the court has adopted a nonstatutory procedure whereby a minor who would otherwise be completely removed from the home is "detained" at home under certain conditions. The Department explains "detention" under this proceeding is analogous to a trial placement or extended visit with the parent and not a full physical custody or "placement" which would require a petition under section 387 if the minor was later to be removed. The Department contends this procedure fills a void in the Welfare and Institutions Code which only expressly provides for placement in the home or total removal of the minor. The Department further contends this procedure can be implied from the court's authority to regulate placement and visitation.
Rodney disagrees with the Department's characterization of "detention" as a procedure to fill a void in the Welfare and Institutions Code, arguing that at least in the case of a noncustodial parent, section 361.2, subdivision (b)(2) provides for custody with the parent subject to the supervision of the juvenile court. Rather than filling a void in the statutory scheme, Rodney contends the practice as applied to him serves only the purpose of bypassing the statutory protections provided by sections 387[7] and 364, subdivision (e)[8] which would allow the later removal of the children from his custody only after the filing of a petition and noticed motion.
This case does not present a sufficient record to decide whether the described "nonstatutory procedure" is proper. Nor is such a decision necessary, since we reverse on other grounds. However, the Department's *1823 representations as to the nature of such a procedure compel us to comment briefly, particularly with respect to a noncustodial parent requesting custody.[9]
The statutory scheme itself through section 361.2, subdivision (b)(2) provides for continued juvenile court supervision should a minor be placed with a noncustodial parent and the need to develop a "nonstatutory" procedure appears unnecessary and possibly suspect.[10] This is particularly so if the nonstatutory procedure allows the Department and the court to circumvent the section 361.2 requirement of placement with a noncustodial parent requesting custody absent a finding of detriment to the minor. If the court substitutes "detention" for "placement," it is clear the Department retains more control since the procedure would allow a minor to be expeditiously removed from the noncustodial parent should the "detention" later prove unsatisfactory. However, such removal may be accomplished without meeting statutory requirements and may be in derogation of the goal to preserve family ties and to limit the court's control of the minor to that necessary for protection of the minor and the public. (See, e.g., §§ 202, subd. (a), 361, subd. (a).) Moreover, if the court "removes" custody from both the custodial, offending parent and the noncustodial, nonoffending parent based on the acts of the custodial parent alone, fails to make a determination as to the noncustodial parent under section 361.2 and "detains" the child with the noncustodial parent, the court has created a potential for the termination of the noncustodial parental rights. (See §§ 366.21, subds. (e) & (g), 366.26, subd. (b)(1).) Any need for expediency should not be allowed to erode or eradicate the statutory requirements for "placement" and "removal" provided by the Legislature.
Most important, if the court regularly denies "placement" with a noncustodial parent requesting custody and instead "detains" the minor with that *1824 parent, the gravity of the decision required by section 361.2, subdivision (a) is subverted. It is subjectively easier for a court to find "placement" with the parent is detrimental when, through the use of "detention," the minor still lives with that parent. Section 361.2 requires a difficult decision; it does not serve the court or the system well to diminish its impact.

Implied Findings Are Inappropriate
(1a) The Department contends this court may imply the finding of detriment required under section 361.2, subdivision (a) and urges us to do so. (See In re Andrea G. (1990) 221 Cal. App.3d 547, 554-555 [270 Cal. Rptr. 534]; In re Corienna G. (1989) 213 Cal. App.3d 73, 83-85 [261 Cal. Rptr. 462].)[11] It further argues Rodney has failed to meet his burden of showing there was no substantial evidence to support the trial court's findings. (See In re Geoffrey G. (1979) 98 Cal. App.3d 412, 420 [159 Cal. Rptr. 460].) As discussed below, we decline to imply a finding of detriment.
Implying a finding of detriment under section 361.2, presupposes the court considered the correct code provision. However, we find no reference to section 361.2, subdivisions (a) and (b) requirements regarding placement with a noncustodial parent anywhere in the Department's reports, the hearing transcript, or the court's order. Rather, the court removed the children from their "parents" pursuant to section 361, subdivision (b), a section that did not *1825 apply to Rodney as the children did not reside with Rodney at the time the petition was initiated. Additionally, the court placed the care, custody, control, and conduct of the minors in the Department pursuant to "section 361.2, subdivision (b)."
In 1994 section 361.2 was amended to add subdivision (c) requiring the court to make an express finding of detriment. (Stats. 1994, ch. 461, § 1.) The section was also renumbered so that subdivision (a) requires placement with a noncustodial parent requesting custody absent a finding of detriment, subdivision (b) provides the two alternate types of placement with a noncustodial parent and subdivision (d) provides for care, custody, control, and conduct of the minor under the supervision of the probation officer with several possible placements. (Ibid.) Before the 1994 amendment, all provisions as to placement with a noncustodial parent were found in subdivision (a) and current subdivision (d) was set forth at subdivision (b). (Stats. 1993, ch. 1089, § 5.5.) The trial court appeared to be unfamiliar with the 1994 amendments to section 361.2.
It is therefore not clear on the record that the trial court even considered the statutory provision applicable to Rodney's request that the children be placed with him. We are not satisfied on this record that the trial court adequately explored whether placing the children with Rodney would be detrimental to them within the meaning of section 361.2, subdivision (a) or that implied findings are warranted. (See In re R.S. (1985) 167 Cal. App.3d 946, 961 [213 Cal. Rptr. 690].)
Moreover, even if we were to conclude the court considered the correct code provision, we would be reluctant to imply the court made a finding of detriment based on the evidence presented. (2), (1b) Where insufficiency of the evidence is an issue, an appellate court reviews the entire record in the light most favorable to the order and determines whether any substantial evidence supports the conclusion of the trier of fact. (In re Angelia P. (1981) 28 Cal.3d 908, 924 [171 Cal. Rptr. 637, 623 P.2d 198]; In re Katrina C. (1988) 201 Cal. App.3d 540, 547 [247 Cal. Rptr. 784].) However, where the trial court has failed to make express findings the appellate court generally implies such findings only where the evidence is clear. (See, e.g., In re Andrea G., supra, 221 Cal. App.3d at pp. 554-555 ["ample" evidence supported implied finding and result "obvious" from the record]; In re Corienna G., supra, 213 Cal. App.3d at pp. 83-84 [substantial evidence "amply" supported implied finding].)
The Department argues substantial evidence supports an implied finding of detriment, based on Rodney having permitted one-year-old Sonja and *1826 two-year-old Connie to have unsupervised contact with Angela in violation of a court order. It further contends that despite knowledge of Angela's inappropriate discipline of the children prior to the filing of the petition, Rodney had failed to intervene to protect them. It also points out Rodney had requested in-home parenting services be stopped and "missed a therapy appointment for Olar and Marquis."
The Department's reports demonstrate an overall willingness on Rodney's part to cooperate with the Department in getting services for the children. Considering his overall performance, the fact that he may or may not have missed one therapy appointment does not evidence that his children will suffer detriment if they are placed with him. Nor does Rodney's reluctance to continue with voluntary in-home parenting services, which he claims are ineffective because of the interruptions of six children, demonstrate any detriment. This is particularly so considering Rodney's expressed willingness to continue such training outside the home.
The Department raises the issue of Rodney purportedly failing to protect his children from Angela before the petition was filed, for the first time on this appeal. They refer to a statement in the police investigative report attributed to Rodney where he stated Angela had in the past become physical with the children by grabbing them, leaving red marks. The Department, however, does not direct our attention to any evidence that Rodney failed to act to protect the children. With respect to the incident bringing the children under the court's supervision, Rodney on his own initiative took Marquis to his home rather than allowing him to return to Angela. With the assistance of the Department and the police he also removed the other children from Angela's home.
Leaving two of the children alone with Angela in violation of the trial court's order that her visits be supervised is by far the most serious issue raised by the Department. Even in the absence of the court's order, leaving the children alone with Angela demonstrated poor judgment considering her previous treatment of Olar and Marquis. However, this incident must be viewed in the context of the entire record to determine whether placing the children with Rodney would be detrimental. The Department had left the supervision of Angela's visits to Rodney. At the dispositional hearing, Rodney's attorney explained Rodney had not understood the court order prohibited him from leaving Angela alone with the children. At the time of the hearing, he understood the children were not to be left unattended with Angela. No detriment to the children resulted from Rodney having left them with Angela.
The overall record shows the children are doing very well under the care of their father. According to the Department's own reports, all the children *1827 are well taken care of and in good health. Rodney has been generally receptive to services and cooperative with the Department. Rodney and his parents are providing structure and routine for the children. The Department at all times has recommended that the children be kept in Rodney's care.
As discussed in the next part of this opinion, a clear and convincing evidence standard of proof applies to the section 361.2, subdivision (a) decision whether placement with a noncustodial parent would be detrimental. We question whether viewing the record as a whole, a trial court could reasonably find that allowing an unsupervised visit demonstrated placement with the father would be detrimental to the children. In any event, this is certainly not the clear-cut case in which an appellate court may imply such a finding.[12]

Standard of Proof to Be Applied Upon Remand
(3a) The Department contends a trial court may make a finding of detriment under section 361.2, subdivision (a) based on a preponderance of the evidence standard of proof while Rodney contends a finding supported by clear and convincing evidence is required. As discussed below, we conclude the correct standard of proof is clear and convincing evidence.
(4a) Generally, where no specific burden of proof is specified, preponderance of the evidence applies. (Evid. Code, § 115.) (5) Moreover, if a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicates an intent the provision is not applicable to the statute from which it was omitted. (In re Gerald J. (1991) 1 Cal. App.4th 1180, 1186 [2 Cal. Rptr.2d 569].) (3b) Section 361, subdivision (b), when addressing taking a minor from the physical custody of a parent with whom the minor resides at the time the petition is initiated, requires the court to find any of the conditions warranting removal by clear and convincing evidence while section 361.2, subdivision (a) is silent on the applicable standard of proof to determine whether placement with a noncustodial parent would be detrimental. Absent any other considerations, a preponderance of the evidence standard would apply.
(4b), (3c) However, a preponderance of the evidence standard of proof cannot apply when to do so violates a constitutional right to due process. (See Santosky v. Kramer (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. *1828 1388].) The function of a standard of proof as embodied in the due process clause is to instruct a fact finder in the degree of confidence required by a particular type of adjudication. (Id. at pp. 754-755 [71 L.Ed.2d at pp. 606-608]; Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 251 [19 Cal. Rptr.2d 698, 851 P.2d 1307].) The standard reflects both the weight of private and public interests affected and a societal judgment of how the risk of error should be distributed between the parties. (Ibid.)
A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood. (In re Carmaleta B. (1978) 21 Cal.3d 482, 489 [146 Cal. Rptr. 623, 579 P.2d 514]; see also Santosky v. Kramer, supra, 455 U.S. at p. 753 [71 L.Ed.2d at p. 606]; Stanley v. Illinois (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208].) When individual interests are at stake which are particularly important and more substantial than the mere loss of money, a clear and convincing evidence standard has been required. (See Santosky v. Kramer, supra, 455 U.S. at p. 756 [71 L.Ed.2d at p. 608].) In Santosky, the Supreme Court held that due process requires a finding of parental unfitness be supported by a minimum of clear and convincing evidence to terminate parental rights. (Id. at pp. 768-770 [71 L.Ed.2d at pp. 616-617].)
In Cynthia D. v. Superior Court, supra, 5 Cal.4th 242 the California Supreme Court addressed whether under the current California dependency procedures, section 366.26, which allows termination of parental rights based on detriment findings made at earlier review hearings by a preponderance of the evidence, violated the due process clause. The court held that considering the entire process for terminating parental rights under the dependency statutes, the section 366.26 procedure comported with due process requirements. (Cynthia D. v. Superior Court, supra, 5 Cal.4th at p. 256.) Central to the court's analysis were the procedural safeguards built into the system whereby the state had continually been required to establish that a return of custody to a parent would be detrimental to the child. (Id. at p. 253.) The court emphasized that a child could not initially be removed from parental custody under section 361, subdivision (b) except upon a showing by clear and convincing evidence that one of the circumstances justifying removal[13] existed and that there were a series of hearings involving ongoing reunification efforts at which a statutory presumption that the child should *1829 be returned to the custody of the parent applied (§§ 366.21, subds. (e) & (f), 366.22, subd. (a)). (Cynthia D. v. Superior Court, supra, 5 Cal.4th at p. 253.) The fact that the child could not initially be removed from custody absent a finding supported by clear and convincing evidence is a linchpin of the court's determination that the statutory scheme for terminating parental rights comported with due process requirements.
Here, we do not deal with the termination of parental rights but rather with the initial denial of placement with a noncustodial parent. However, the trial court's decision at the dispositional stage is critical to all further proceedings. Should the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights. At all later review hearings, the court may deny return of the child to the parent's physical custody based on a finding supported only by a preponderance of the evidence that return would create a substantial risk of detriment to the child's physical or emotional well-being. (§§ 366.21, subds. (e) & (f), 366.22, subd. (a)).)
If a preponderance of the evidence standard of proof is applied to deny initial placement with the noncustodial parent, that parent may have his or her parental rights terminated without the question of possible detriment engendered by that parent ever being subjected to a heightened level of scrutiny. Moreover, applying a clear and convincing standard of proof to remove custody from the custodial parent while denying placement with the noncustodial parent based on a preponderance of the evidence would lead to the anomalous result that a parent who had no connection with the circumstances that brought the child within the jurisdiction of the court could have his or her rights terminated upon a lesser showing than the parent who created those circumstances. We therefore conclude that to comport with the requirements of the due process clause, a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence.[14]

*1830 DISPOSITION
The orders placing the children in the custody of the Department are reversed, and the matter is remanded for the court to consider and make proper findings under section 361.2, subdivision (a).
Nares, J., and Haller, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] The children's dates of birth are: Marquis, October 5, 1987; Olar, August 24, 1988; Elijah, December 13, 1990; Dachuray, November 16, 1991; Connie, January 5, 1993; and Sonja, February 6, 1994. At the time of the child protective services reference, Angela was again pregnant but by another man.
[3] A "partial thickness" or "second degree" burn is a relatively severe burn penetrating the entire epidermis and varying depths of the dermis. It usually occurs after extended exposure to heat. (1 Attorneys' Textbook of Medicine: Manual of Traumatic Injuries (1994) § 8.04[2] [b], p. 8-8.)
[4] The court referred to section 361.2, subdivision (b) which appears to be a mistaken reference to the numbering in effect before the current renumbering took effect on January 1, 1995. (Stats. 1994, ch. 461, § 1.)
[5] Section 361.2 in pertinent part provides:

"(a) When a court orders removal of a minor pursuant to Section 361, the court shall first determine whether there is a parent of the minor, with whom the minor was not residing at the time that the events or conditions arose that brought the minor within the provisions of Section 300, who desires to assume custody of the minor. If such a parent requests custody the court shall place the minor with the parent unless it finds that placement with that parent would be detrimental to the minor.
"(b) If the court places the minor with such a parent it may do either of the following:
"(1) Order that the parent become legal and physical custodian of the child. The court may also provide reasonable visitation by the noncustodial parent. The court shall then terminate its jurisdiction over the minor. The custody order shall continue unless modified by a subsequent order of the superior court. The order of the juvenile court shall be filed in any domestic relation proceeding between the parents.
"(2) Order that the parent assume custody subject to the supervision of the juvenile court. In such a case the court may order that reunification services be provided to the parent or guardian from whom the minor is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the minor.
"(c) The court shall make a finding either in writing or on the record of the basis for its determination under subdivisions (a) and (b).
"(d) When the court orders removal pursuant to Section 361, the court shall order the care, custody, control, and conduct of the minor to be under the supervision of the probation officer who may place the minor in any of the following:
"(1) The home of a relative, including a noncustodial parent.
".... .... .... .... .... .... ....
"(4) With a foster family agency to be placed in a suitable licensed foster family home or certified family home which has been certified by the agency as meeting licensing standards."
[6] Section 361 provides in pertinent part: "(b) No dependent child shall be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated unless the juvenile court finds clear and convincing evidence of any of the following:

"(1) There is a substantial danger to the physical health of the minor or would be if the minor was returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the custody of the parent or guardian with whom the minor resided at the time of injury."
[7] Section 387 in pertinent part provides: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent ... and directing placement in a foster home, or commitment to a private or county institution, shall be made only after noticed hearing upon a supplemental petition."
[8] Section 364, subdivision (e) provides: "In any case in which the court has ordered that a parent ... shall retain physical custody of a minor subject to supervision by a probation officer, and the probation officer subsequently receives a report of acts or circumstances which indicate that there is reasonable cause to believe that the minor is a person described in subdivision (a), (d), or (e) of Section 300, the probation officer shall commence proceedings under this chapter. If, as a result of the proceedings required, the court finds that the minor is a person described in subdivision (a), (d), or (e) of Section 300, the court shall remove the minor from the care, custody, and control of the minor's parent ... and shall commit the minor to the care, custody, and control of the probation officer pursuant to Section 361."
[9] We do not address the described nonstatutory "detention" scheme as it may relate to custodial parents from whom the minor has been removed pursuant to section 361.
[10] We have located one case in which the court arguably found the allegations of a petition to be true based upon the conduct of a custodial parent, declared the minor a dependent child placed in the department's custody, but permitted the minor to reside with his parents. (In re Jeffrey P. (1990) 218 Cal. App.3d 1548, 1552 [267 Cal. Rptr. 764].) The court equated allowing the child to reside with his parents with a lack of removal of physical custody and denied the arguably noncustodial parent the right to have his home investigated to facilitate placement with him pursuant to section 361.2. (218 Cal. App.3d at pp. 1554-1555.) In re Jeffrey P. is distinguishable from the instant case in that it is not entirely clear whether the father was truly a noncustodial parent before the petition was filed. Nor is it clear whether the minor lived with the father, the mother, or both, after the petition was filed. Moreover, the court did not consider any future impact on a noncustodial parent's rights that might result from denial of placement under section 361.2. We therefore do not consider In re Jeffrey P. to stand for the proposition that a noncustodial parent seeking custody under section 361.2 may be deprived of a judicial determination under that section by placing the dependent child in the custody of the Department and thereafter "detaining" the child with the noncustodial parent.
[11] In making its argument the Department also relies on Michael U. v. Jamie B. (1985) 39 Cal.3d 787 [218 Cal. Rptr. 39, 705 P.2d 362] (hereafter Michael U.) and In re Marriage of Arceneaux (1990) 51 Cal.3d 1130 [275 Cal. Rptr. 797, 800 P.2d 1227] (hereafter Arceneaux), which respectively hold that if a party does not request a statement of decision or fails to point out deficiencies in the trial court's statement, the Court of Appeal must assume the trial court made findings necessary to sustain the judgment. (Michael U., supra, 39 Cal.3d at pp. 792-793; Arceneaux, supra, 51 Cal.3d at pp. 1133-1138.) The appellate court simply determines whether substantial evidence supported the implied findings. (Michael U., supra, 39 Cal.3d at pp. 793-796.) Even assuming the court erred in not making an express finding under section 361.2, the Department argues any error was harmless since Rodney did not request findings or a statement of decision.

Based on the wording of section 361.2, subdivision (c) specifically requiring a court to make a finding of the basis for its detriment determination, Rodney argues such finding may not be implied. He distinguishes both Michael U. and Arceneaux as they involved requirements of the Civil Code and Code of Civil Procedure which do not apply in dependency proceedings unless otherwise specified. (See In re Jennifer R. (1993) 14 Cal. App.4th 704, 711 [17 Cal. Rptr.2d 759].) He further argues the cases are inapposite as they involve Code of Civil Procedure section 632 which does not require a statement of decision absent a party's request, unlike section 361.2, subdivision (c) which puts the onus on the court to make the finding.
Because we conclude the trial court likely applied the wrong standard in reaching its decision and further conclude the evidence of detriment is insufficient for us to imply such a finding, it is unnecessary for us to address the applicability of Michael U. and Arceneaux. We decline to do so.
[12] Minors' counsel requests that we consider an additional information report filed after the dispositional hearing. We have reviewed the report and conclude it adds little to our deliberations. We therefore decline to take judicial notice of the report which may be considered as well as any other additional information available on remand.
[13] All circumstances warranting removal from the custodial parent under section 361, subdivision (b) involve situations in which there is a substantial risk of detriment to the child if he or she is not removed, i.e., substantial danger to the child's physical health exists with no reasonable means to protect physical health without removal (§ 361, subd. (b)(1)), parent is unwilling to have physical custody (§ 361, subd. (b)(2)), child is suffering severe emotional damage and there is no means to protect emotional health without removal (§ 361, subd. (b)(3)), the child or a sibling has been sexually abused or is at substantial risk of being sexually abused and there is no reasonable means to protect without removal (§ 361, subd. (b)(4)), and the child has been left without provision for support, an incarcerated parent cannot arrange care, or a custodian with whom the parent left the child is unwilling or unable to provide care and the parent cannot be found (§ 361, subd. (b)(5)).
[14] We recognize that the California Judges Benchguide for juvenile dependency relying on Evidence Code section 115 states that preponderance of the evidence is the appropriate standard. (Cal. Judges Benchguide: Juvenile Dependency Disposition Hearing (1994) Benchguide 102, § 102.22, p. 102-27.) Due process requirements, however, were not considered.