Filed 9/17/20  In re K.B. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | B302031 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AMBER M., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP05317A) |

APPEAL from an order of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Amber M. (mother) appeals from the juvenile court's order taking jurisdiction over K.B. (age four), granting father sole legal and physical custody, and terminating jurisdiction. She contends that the court should have dismissed the petition at the adjudication hearing because father is nonoffending, with the result that this case belongs in the family court. We disagree and affirm.

## BACKGROUND

Mother drinks a bottle of tequila a day and is belligerent in front of the child. The Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code[1] after two separate incidents in which mother fought with elderly and juvenile family members. Mother hit maternal great-grandmother (GGM) and uncle. She attacked 13-year-old aunt by "whaling" on aunt, punching her in the face, pouring beer down her back, and pulling her hair. Mother threw and broke objects in the house. K.B., then three years old, witnessed "everything." A neighbor called the police and great-uncle tackled mother to the ground. Mother grabbed K.B. and drove away without securing him in a child safety seat.

Father does not live with mother. He is stable and employed. During the two years they lived together he and mother drank alcohol, but father has been sober for six years.

_____

[1] All further statutory references are to the Welfare and Institutions Code.

2

GGM explained that when mother and father separated, mother began drinking heavily. She was "out of control," and refused to go into rehabilitation. The six-count petition alleged mother's fighting with family members in K.B.'s presence, her alcohol abuse, and driving under the influence with the unsecured child in the car. (§ 300, subds. (a) & (b).) Father is nonoffending.

On September 19, 2019, mother submitted to three of the counts in the petition. The juvenile court sustained the petition and declared K.B. a dependent. Turning to the disposition, the court removed the child from mother's custody and placed him with father. It awarded the parents joint legal custody and father sole physical custody finding that although mother denied she had a problem with alcohol, mother was able to make health care and education decisions for the child when sober. The court awarded mother monitored visits, and directed the parents to mediate visitation by devising a schedule, choosing a monitor, and agreeing to methods for exchanging the child and for communicating with each other.

With all parties agreeing to terminate dependency jurisdiction, the juvenile court found under sections "245.5 and 390,[2] that the child is safely in the custody of the father, and

_____

[2] Section 245.5 reads, "In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents . . . of a minor who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of . . . the minor. These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor, including education and medical treatment."

that it is in the interest of justice in the best interest of the welfare of the child that jurisdiction be terminated. The court finds that father is not in need of services from" DCFS. Based on these findings, the court terminated its jurisdiction but stayed termination pending receipt of a custody order and of the parents' mediated visitation agreement. The court set a hearing for October 25, 2019 for receipt of the custody order.

DCFS reported in a last minute information for the court that mother was not attending any programs and did not respond to the social worker's attempts to reach her. Mother also failed to appear for her weekly alcohol tests.

On October 25, 2019, the juvenile court observed that DCFS's last minute information for the court contained details about issues that may affect the child's safety in the future. The court changed its custody award to give father sole legal and physical custody. The court continued the hearing to October 28, 2019 for receipt of the custody order.

After mediation, the parents signed a parenting plan agreement, which is designated as attachment 10 to form JV-200.

The October 28, 2019 hearing was trailed to the following day. On October 29, 2019, the juvenile court filed the final custody order on form JV-200 with the mediated visitation agreement. The court then lifted its stay and terminated its jurisdiction. Mother appealed.

---

Section 390 reads, "A judge of the juvenile court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent . . . of the minor is not in need of treatment or rehabilitation."

4

## DISCUSSION[3]

Mother's briefs do not challenge the sufficiency of the evidence to support jurisdiction or the terms of the custody order. Rather, relying on *In re A.G.* (2013) 220 Cal.App.4th 675 (*A.G.*) and *In re Phoenix B.* (1990) 218 Cal.App.3d 787 (*Phoenix B.*), she contends that the juvenile court should have dismissed the petition at the jurisdiction hearing and stayed the dismissal until father obtained a family court custody award. She argues that father, who is nonoffending, is indisputably a competent parent and capable of properly caring for K.B. In view of the fact that the court did terminate its jurisdiction under section 390 concerning dismissal, mother is essentially arguing that the court should not have taken jurisdiction in the first place, as this case is properly a family law matter.

Preliminarily, mother never asked the juvenile court to dismiss the petition, and instead submitted to three of the petition's counts. She also agreed to termination of jurisdiction, which is predicated on the court taking dependency jurisdiction first. It is "clearly unproductive to deprive a trial court of the opportunity to correct . . . a purported defect by allowing a litigant to raise the claimed error for the first time on appeal." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138.) It "would be unfair to allow counsel to lull the trial court and opposing counsel into believing the . . . decision was acceptable,

---

[3] We disagree with DCFS that mother's appeal was untimely. Filed on November 1, 2019, the notice specified that mother was appealing from the custody order entered on October 29, 2019 in which the juvenile court lifted its stay and terminated jurisdiction. The appeal also sought "other appropriate relief."

5

and thereafter to take advantage of an error on appeal although it could have been corrected" in the trial court. (*Ibid*.)

Even considering the merits of mother's contention that the juvenile court abused its discretion in failing to dismiss the petition sua sponte before adjudicating it, we conclude the argument is meritless.

The cases on which mother relies are inapposite. In *Phoenix B.*, *supra*, 218 Cal.App.3d at pages 789 to 790, the mother was involuntarily hospitalized for a mental breakdown and so social services filed a petition. Social services released the child to the father, who was willing and able to care for her. (*Id.* at p. 790.) Social services then moved to dismiss the petition, noting that the mother planned to seek custody and suggesting that the family court was the appropriate forum. (*Ibid*.) The appellate court affirmed the order dismissing the petition on the ground that the juvenile court did not abuse its discretion as the father was providing appropriate care. (*Id.* at p. 794.) Hence, the matter was simply a custody dispute.

In *A.G.*, *supra*, 220 Cal.App.4th 675, dependency jurisdiction was also based on the mother's mental illness, which rendered her unable to care for her children. The mother contended that jurisdiction was improper because the nonoffending father was adequately caring for the children. (*Id.* at pp. 677 & 686.) The *A.G.* court concluded that DCFS was unable to show harm based on the mother's illness because the father had been living in the same household with the children and then moved out with them, thus eliminating any risk of harm to the minors, *even if the court had not intervened*. (*Id.* at p. 684.) Therefore, *A.G.* concluded that jurisdiction was improper and

"that matters such as this one belong in the family court." (*Id.* at p. 686.)

Unlike *Phoenix B.* and *A.G.*, this case is not a custody dispute between two competent parents. (Cf. *In re John W.* (1996) 41 Cal.App.4th 961, 976 [custody battles between functional parents belong in family court].) Rather, DCFS has demonstrated harm by substantial evidence. Before dependency jurisdiction, mother was entitled to physical custody K.B. She placed him at risk of harm by repeatedly and violently fighting with her family members in K.B.'s presence and by driving while intoxicated with the child unsecured in the car. Serious conduct was not at issue in *A.G.* or *Phoenix B.* Violence in the presence of children creates a substantial risk of serious harm or illness and is detrimental to them. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Unlike the fathers in *Phoenix B.* and *A.G.*, father here was not living with mother and was not present to protect K.B. from the risk of harm that mother's alcoholism and violence cause. Thus, mother was an offending parent necessitating dependency jurisdiction to protect K.B.

The case also differs from *A.G.*, where there was a simultaneous family law proceeding, and from *Phoenix B.* where the mother was seeking a family law order. Father here could not use a pending family court case to seek custody of K.B. Meanwhile, K.B. needed immediate intervention. The juvenile court, with its mandate to protect children from harm and preserve families that are safe for the child (§ 300.2), is the proper court in this case.

Finally, as explained in *In re Nicholas E.* (2015) 236 Cal.App.4th 458, 465, nothing "in . . . *A.G.*—or either of the cases on which it relied—purported to authorize a juvenile court

7

to skip the evidentiary hearing on jurisdiction or to apply a rule of abstention just because a nonoffending parent could gain custody of the child in an ongoing family court proceeding." That result would be "inconsistent with the long-standing principle that dependency proceedings have primacy over family court proceedings when it comes to child custody matters." (*Nicholas E.*, at p. 465.) In sum, the juvenile court properly took jurisdiction here to protect the child from harm. Then, after finding that K.B. could be safe in father's physical and legal custody, the court properly terminated its jurisdiction.

## DISPOSITION

The order is affirmed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


LAVIN, Acting P. J.


EGERTON, J.

8