Filed 10/1/21  In re Sophia C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re SOPHIA C., a Person Coming Under the Juvenile Court Law. | B310944 (Los Angeles County Super. Ct. No. 20CCJP05855) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MICHAEL C., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steff Padilla, Judge Pro Tempore. Reversed and remanded with directions.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

—————————————————

The Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1) against Michael C. (father) based on allegations that his drug use rendered him incapable of caring for and supervising Sophia C., born in July 2020.[1] The petition also alleged that Brenda C., Sophia's mother, had failed to protect Sophia from father.

The juvenile court amended the petition to strike the allegations against mother and sustained the allegations against father. After sustaining the petition, the juvenile court terminated jurisdiction with an exit order granting full legal and physical custody to mother.

On appeal, father argues that based on the juvenile court's conclusion that mother could care for Sophia, the juvenile court should have dismissed the petition and stayed its order dismissing the petition until mother could obtain orders from the family court.[2] We agree and will reverse the juvenile court's orders.

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

2

## BACKGROUND

Father and mother met in July 2019 and became romantically involved around October 2019. Sophia was born in July 2020.

Mother and father did not live together. Mother lived with her mother, stepfather, and minor siblings, and father lived with his uncle and other relatives. The two did not visit inside each other's homes. And father's infrequent visits with Sophia happened in an area outside mother's apartment; mother was always present for the entirety of father's visits with Sophia.

Sophia came to DCFS's attention as the result of a probation compliance check in October 2020 at the home where father was living. Father's uncle was on probation, and during their probation check, officers discovered methamphetamine in father's bedroom. Officers also reported that father appeared to be under the influence of a controlled substance during their probation check. Father later told DCFS that he had been under the influence of Xanax and methamphetamine.

When DCFS asked father if he was under the influence when he visited Sophia, he told DCFS that he used drugs (marijuana, Xanax and methamphetamine) every other day, and that he "was high the entire day, every day." For her part, mother told DCFS that father visited Sophia one or two times per month, and that he did not appear to her to be under the influence of drugs when he visited. Mother reported that she had never seen father smoke or use a controlled substance. Mother reported to DCFS that she believed she was able to determine when people were under the influence of drugs. But when a DCFS social worker told her some of the common indicators of methamphetamine use, mother responded that she was not

3

aware of the signs the social worker shared. During the same interview, mother "reported that when the father visited [Sophia, mother] was present at all times."

Based on father's drug abuse, DCFS filed a petition on November 2, 2020 under section 300, subdivision (b)(1) alleging that father's drug abuse rendered him incapable of caring for or supervising Sophia and that mother had failed to protect Sophia from father.

In its jurisdiction and disposition report to the juvenile court, DCFS reported that Sophia was safe with mother: "The child seems to be safe in the care of mother at this time. Mother is protective of the child and is able and willing to protect and provide a safe, stable and nurturing home for the child. Mother is meeting the child's needs by providing food, shelter, clothing, education[,] and medical care as necessary. At this time, DCFS finds that the child is safe in the home of mother and that mother's home continues to be appropriate for the child." Father's drug abuse continued through DCFS's investigation, and he was consequently unable to coordinate visitation with Sophia. Father was incarcerated on January 5, 2021.

At the jurisdiction and disposition hearing on February 8, 2021, the juvenile court amended the petition to strike the allegation that mother failed to protect Sophia. The court sustained the amended section 300, subdivision (b)(1) petition, which alleged in full: "The child['s] father . . . has a history of substance abuse and is a current abuser of amphetamine, methamphetamine, Xanax[,] and marijuana, which renders the father incapable of providing the child with regular care and supervision. On prior occasions, the father was under the influence of a controlled substance while having contacts with the

4

child at the child's home while the child was present in the home. On 10/15/20, the father had a positive toxicology screen for amphetamine . . . , methamphetamine . . . [,] and marijuana . . . . The child is of such a young age as to require constant care and supervision and the father's illicit drug use interferes with providing regular care and supervision of the child.  The father's substance abuse endanger[s] the child's physical health and safety, create[s] a detrimental home environment[,] and place[s] the child at risk of serious physical harm, damage[,] and failure to protect."

The juvenile court ordered Sophia placed in mother's home, terminated jurisdiction, and entered an order awarding mother sole legal and physical custody with supervised visitation for father once a month after his release.

Father filed a timely notice of appeal.

## DISCUSSION

Father contends on appeal that the juvenile court erred when it found that Sophia was a person described by section 300, subdivision (b)(1) because at all times during the dependency proceeding, mother was capable of (and in fact was capably) caring for Sophia.

Section 300, subdivision (b)(1) provides for juvenile court jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child

with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." After the child becomes a dependent pursuant to section 300, subdivision (b)(1), "[t]he child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (§ 300, subd. (b)(1).)

"The juvenile court's jurisdictional finding that the minors are persons described in section 300 must be supported by a preponderance of the evidence." (*In re A.G.* (2013) 220 Cal.App.4th 675, 682 (*A.G.*).) "We review the juvenile court's findings for substantial evidence. [Citation.] In so doing, we view the evidence in the light most favorable to the juvenile court's order, bearing in mind that, while substantial evidence may consist of inferences, inferences which are the result of speculation cannot support a finding." (*In re A.L.* (2017) 18 Cal.App.5th 1044, 1049.)

Father does not challenge the juvenile court's findings regarding the nature and extent of his drug abuse. In his opening brief, he states: "The assertion that [f]ather has a substance abuse problem is well-supported by the information in DCFS's reports. Father acknowledged as much in his statements to the social worker when he was interviewed for the detention report."

Father contends, however, that because Sophia lives with mother, has never visited father's home, sees father only very sporadically, and then under mother's supervision, and Sophia is safe, cared for, and protected by mother from any possible neglect

6

or harm that might result from father's drug abuse, there is no evidence of a nexus between father's drug abuse and the risk of harm required by section 300, subdivision (b)(1). Father relies primarily on our opinion in *A.G.*, *supra*, 220 Cal.App.4th 675, for that proposition.

The family in *A.G.* came to DCFS's, and the juvenile court found that the minors in that case were people described by section 300, subdivision (b)(1), based on mother's mental illness. Mother was involuntarily hospitalized and "subsequently failed to keep her psychiatric appointments and did not take her psychotropic medication." (*A.G.*, *supra*, 220 Cal.App.4th at p. 677.) " '[O]n at least one occasion,' [m]other told the nanny to go home, and the minors were alone with [m]other for about three hours until [f]ather returned home from work." (*Ibid.*) The case also noted, however, that father and mother had initiated divorce proceedings, that father had "temporarily moved out of the family home with the minors to protect them," and ultimately had requested that the juvenile court grant him full legal and physical custody of the minors; the juvenile court did so, and terminated juvenile court jurisdiction. (*Id.* at pp. 678, 680, 682.)

In *A.G.*, "[w]e conclude[d] that the court erred in sustaining a petition that alleged only that [m]other is mentally ill and is unable to care for the minors where [f]ather has always been, and is, capable of properly caring for them." (*A.G.*, *supra*, 220 Cal.App.4th at p. 683.) We considered the record evidence of mother's mental illness and concluded that the evidence supported the juvenile court's conclusion on that point. "That [m]other is mentally ill," we said, "is not the end of the story because DCFS 'has the burden of showing specifically how the minors have been or will be harmed . . . .' " (*Id.* at p. 684.)

7

"Although the evidence supported the finding that [m]other was unable to provide regular care for the minors due to her mental illness, [f]ather has shown remarkable dedication to the minors and that he is able to protect them from any harm from [m]other's mental illness." (*Ibid.*)

We relied on *In re Phoenix B.* (1990) 218 Cal.App.3d 787, to reach the conclusion we reached in *A.G.* In that matter, we noted, "mother and father were married, but living separately. When the father came forward, the minor was released to his care." (*A.G.*, *supra*, 220 Cal.App.4th at p. 684.) We noted that in *Phoenix B.*, the mother would "have to be closely supervised and complete parent education classes in order for the minor to be returned to her. The father, on the other hand, was compliant with the department and cared appropriately for the minor." (*A.G.*, *supra*, 220 Cal.App.4th at pp. 684-685.) We observed that the *Phoenix B.* "court held that the juvenile court properly dismissed dependency proceedings after the department determined that the father 'was willing and able to provide for [the minor's] care' [citation] and that the mother's remedy was to assert her custody rights in family court [citation]." (*A.G.*, at p. 685.)

We see little distinction between this case and the *A.G.* and *Phoenix B.* cases. Here, mother and father have never lived together, neither mother nor Sophia have ever visited father's home, father is not allowed inside the home where mother and Sophia live, and mother has been present for and supervised every visit between Sophia and father. DCFS concluded that mother provided a safe, stable, and nurturing home for Sophia, and that Sophia had never been harmed or at the risk of harm

8

based on father's incapability of caring for her because mother remained capable of caring for Sophia at all times.

In *A.G.*, we remanded the matter to the family court to enter custody and visitation orders, as father has requested we do here. There, we said that matters like this one "belong in family court, where it ultimately ended up after the juvenile court determined the minors were not at risk in [f]ather's custody and awarded [f]ather custody and [m]other monitored visitation." (*A.G.*, *supra*, 220 Cal.App.4th at p. 686.)

We agree with father and reverse the juvenile court's jurisdictional, dispositional, and custody orders. As in *A.G.*, we will "remand the matter to the family court for a hearing on the custody and visitation issue."

**DISPOSITION**

The juvenile court's jurisdictional, dispositional, and custody orders are reversed. The matter is remanded to the family court for proceedings regarding custody and visitation.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

9