[No. C036963. Third Dist. July 13, 2001.]

In re MANOLITO L. et al., Persons Coming Under the Juvenile Court Law.
SISKIYOU COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v.
ROSIE H., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

 \*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

754

**COUNSEL**

Mario de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant.

Frank J. DeMarco, County Counsel, William P. Stanley, Assistant County Counsel, Donald R. Langford and Mary Frances McHugh, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—In this dependency proceeding, Rosie H. (appellant), the mother of the minors, Manolito and Paradise, appeals from an order of the juvenile court denying appellant visitation with the minors. (Welf. & Inst. Code, §§ 388, 395; further unspecified statutory references are to this code.)

Appellant claims that, in finding by a preponderance of the evidence that visits would be detrimental to the minors, the court applied an erroneous standard of proof. According to appellant, the court had to find detriment to the minors by clear and convincing evidence. Appellant also contends that, on the evidence presented, the court abused its discretion in denying her visitation.

In the published portion of the opinion, we conclude the juvenile court correctly applied the preponderance of the evidence standard to adjudicate the question of termination of visitation.

In the unpublished portion of the opinion, we reject appellant's contention that, on the evidence presented, the trial court abused its discretion in terminating visitation.

We shall therefore affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1997, the juvenile court assumed jurisdiction over three-year-old Manolito and nine-month-old Paradise. The basis for the dependency of the minors was appellant's use of methamphetamine, the lack of adequate food for the minors, and the need of Paradise for medical treatment for pneumonia and a fungal infection. Thereafter, on December 18, 1997, the court ruled the minors were dependent children, ordered reunification services for appellant, and ordered the children removed from appellant's custody. The children have been in foster care ever since.

Appellant failed to complete the elements of her reunification plan. Moreover, for some time appellant was inconsistent in her attendance at scheduled weekly visitation sessions with the minors. Thereafter, with visitation every other week, appellant visited regularly and her visits with the minors went well.

On March 9, 2000, the juvenile court terminated appellant's parental rights. Thereafter, on August 3, 2000, pursuant to a stipulation by the parties, this court reversed the order terminating parental rights and remanded the matter to the juvenile court for further proceedings. The basis of that stipulation was the possibility of a violation of the notice requirements of the Indian Child Welfare Act.

On October 19, 2000, the Siskiyou County Human Services Department (the Department) filed a petition for modification of the juvenile court's

previous order granting appellant visitation with the minors. (§ 388.) The Department sought a new order denying appellant visits with the minors on the ground such visits would be detrimental to the minors. In support of its request, the Department averred that the last contact the minors had with appellant was in February 2000; allegedly appellant had cancelled a scheduled April 2000 visit and did not reschedule another one.

The Department also claimed the minors were more closely attached to their prospective adoptive parents than to appellant, and had not asked to see appellant. According to the Department, "visits between the minors and [appellant] would be confusing to the minors, would cause them emotional trauma, would interrupt the bonding process that is currently taking place with their foster parents, and would thereby threaten the stability of their current potential adoptive placement."

Manolito's counselor submitted a report in which she concluded that visits with appellant would be "extremely disruptive" to the minor's bonding process with his prospective adoptive parents. The counselor recommended that appellant not be permitted to visit with Manolito, as visits would be "potentially detrimental to the growth, development, and adjustment process [the minor] is undergoing."

Paradise's counselor reported the minor had no memory of appellant. The counselor opined that visitation between appellant and Paradise would be "very confusing" to the minor and interfere with the bonding process with Paradise's prospective adoptive parents. The counselor believed visitation would not be helpful to Paradise and "could potentially be detrimental" to her.

Adoption specialist Hilary Locke testified at the October 27, 2000, hearing on the petition for modification. Locke acknowledged the minors "had some bond" with appellant. However, Locke believed "it would set [the minors] back if . . . they were to see [appellant]. It would create a lot of confusion in their mind[s] as to where they belonged."

According to Locke, the situation could not be explained to the minors, due to their ages. Noting Manolito was six years old and Paradise just three, Locke opined that neither minor had the "cognitive ability" to understand the nature and implications of the adoptive process. Locke also told the juvenile court that, if the minors visited with appellant, "the harm would come from the disruption of [the minors'] ability to move forward where they are now. I don't know that the actual visit would be a bad experience, but what happens afterwards would be detrimental."

Appellant testified she wanted to visit with the minors. She could think of no reason why a visit would be harmful for the minors. Appellant acknowledged she cancelled the scheduled April 2000 visit with the minors because she did not want them to see how upset she was at the prospect of not seeing them again.

At the conclusion of the hearing, counsel for appellant argued no evidence was adduced establishing that visitation between appellant and the minors would be detrimental to the minors. Counsel also criticized the Department for telling the minors previously that they would be adopted before the matter had become final. Counsel argued that the minors should be told "the truth" about the underlying circumstances of the dependency proceedings.

The juvenile court found by a preponderance of the evidence that visitation between appellant and the minors would be detrimental to them. The court stated that, if the correct evidentiary standard were the stricter clear and convincing evidence standard, it would not have found detriment. According to the court, visits would be detrimental to the minors because they would be "confusing" and interfere with the minors' "adjustment" process. The court also suggested that the reports by the minors' counselors contained evidence of actual, rather than merely potential, detriment to the minors.

On November 9, 2000, the juvenile court entered an order providing in relevant part, "Visits between the minors and their mother shall not be allowed." On the same day, appellant filed a notice of appeal from the order.

DISCUSSION

I

*The Juvenile Court Correctly Adjudicated the Termination of Visitation by a Preponderance of the Evidence*

■ Appellant claims the finding by the juvenile court that visitation between appellant and the minors would be detrimental to the minors was erroneous because it was based only on the preponderance of the evidence standard. According to appellant, the correct standard applicable to the visitation issue in this case is the stricter clear and convincing evidence standard. For reasons that follow, we disagree with appellant.

A. *The applicable statutes call for an adjudication of detriment by a preponderance of the evidence*

Section 366.21 generally specifies procedures applicable to status review hearings. (See § 366, subd. (a)(1).) Subdivision (h) of section 366.21

provides: "In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal guardian. *The court shall continue to permit the parent or legal guardian to visit the child pending the hearing unless it finds that visitation would be detrimental to the child.*" (Italics added.)

Section 366.22 generally specifies procedures applicable to permanency review hearings. Subdivision (a) of section 366.22 provides in pertinent part that, if the juvenile court sets a hearing pursuant to section 366.26, "*[t]he court shall continue to permit the parent or legal guardian to visit the child unless it finds that visitation would be detrimental to the child.*" (Italics added.)

An initial question arises whether these statutory requirements apply in the context of the present case. This case does not involve a review hearing or a permanency planning hearing. Rather, the appeal is from an order entered following a hearing on a petition for modification brought pursuant to section 388.[1]

However, the Department has never contended that the finding of detriment required by section 366.21, subdivision (h), and section 366.22, subdivision (a), is inapplicable simply because the instant procedure was brought under section 388. Moreover, the language of section 366.21, subdivision (h) reflects the Legislature's desire that "[t]he court shall continue to permit the parent or legal guardian to visit the child pending the [section 366.26] hearing unless it finds that visitation would be detrimental to the child." Indeed, we read this statutory command broadly in *In re David D.* (1994) 28 Cal.App.4th 941, 954 [33 Cal.Rptr.2d 861], where we said, "[T]he juvenile court was *required* to permit continued visitation pending the

---

[1]Section 388 provides in pertinent part: "(a) Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself or herself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which [is] alleged to require the change of order or termination of jurisdiction. [¶] . . . [¶] (c) If it appears that the best interests of the child may be promoted by the proposed change of order, recognition of a sibling relationship, or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to the persons and by the means prescribed by Section 386, and, in those instances in which the means of giving notice is not prescribed by those sections, then by means the court prescribes."

section 366.26 hearing absent a finding visitation would be detrimental to the minors. [Citations.]" It would be anomalous to dispense with the requisite finding of detriment simply because the question of visitation is adjudicated pursuant to a petition for modification under section 388. We therefore conclude the juvenile court correctly determined it was required to find that visitation would be detrimental to the minors, in order to terminate visitation, even though the termination occurred in the context of the adjudication of a modification petition under section 388.

 The next question is: What standard of proof for adjudication of the question of detriment has the Legislature intended by its enactment of various statutes? As we shall explain, the answer is: preponderance of the evidence.

This is so, first, because our Supreme Court has held that, *where a change in the minor's placement* is sought pursuant to section 388, the correct standard of proof is a preponderance of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706]; see *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1086 [59 Cal.Rptr.2d 575].) We do not believe the Legislature could have intended that different standards of proof would apply to the adjudication of a section 388 petition according to the issue adjudicated (e.g., change of placement or visitation). Accordingly, we conclude that where termination of visitation is sought pursuant to section 388, the issue of termination of visitation, including a finding that continued visitation would be detrimental to the child, should be adjudicated according to a preponderance of the evidence standard.

Even if we examine the statutes that require a finding of detriment— sections 366.21, subdivision (h), and 366.22, subdivision (a)—in isolation from section 388, we reach the same conclusion.

Neither statute specifies a standard of proof for the determination of detriment. However, dependency proceedings are a form of civil case. (*In re Malinda S.* (1990) 51 Cal.3d 368, 381 [272 Cal.Rptr. 787, 795 P.2d 1244].) Evidence Code section 300 provides in pertinent part that, "[e]xcept as otherwise provided by statute, [the Evidence Code] applies in every action . . . ." Thus, except as provided by statute, the Evidence Code applies in dependency proceedings. Evidence Code section 115 states in pertinent part, "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." Because the statutes requiring a finding of detriment do not specify a standard of proof, Evidence Code section 115 dictates that the standard of proof be by a preponderance of the evidence. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1827 [46 Cal.Rptr.2d

198]; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1114 [200 Cal.Rptr. 789].)

■ Moreover, " ' "[i]t is a settled rule of statutory construction that where a statute, with reference to one subject[,] contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." ' " (*In re Marriage of Corman* (1997) 59 Cal.App.4th 1492, 1499 [69 Cal.Rptr.2d 880], quoting *In re Jose A.* (1992) 5 Cal.App.4th 697, 701-702 [7 Cal.Rptr.2d 44].)

■ As appellant recognizes, the Legislature has repeatedly specified the clear and convincing evidence standard of proof in various determinations made in the dependency scheme. Thus, in her brief, appellant recounts: "In juvenile court proceedings for dependent children, the Legislature has specified that clear and convincing evidence is the standard of proof to be applied to most of the findings which must be made. These include the initial decision to remove a child from parental custody (Section 361, subdivision (b)); the determination that reunification services not be offered (Section 361.5, subdivision (b)); the determination that the whereabouts of the parent of a child removed initially under subdivision (g) of section 300 are still unknown or the parent has been convicted of a felony indicating parental unfitness (Section 366.21, subdivision (e)); the determination at the 12-month review hearing whether reasonable reunification services were offered (Section 366.21, subdivision (g)); and the determination at the hearing under section 366.26 whether the child is likely to be adopted (Section 366.26, subdivision (c))."

Most tellingly, as appellant notes, section 361.5, subdivision (e)(1) requires that reasonable reunification services, including visitation, be provided to a parent or guardian who is incarcerated or institutionalized "unless the court determines, *by clear and convincing evidence,* those services would be detrimental to the child." (Italics added.)

The Legislature's frequent specification of the clear and convincing evidence standard of proof in the dependency statutes (and particularly in a statute permitting the denial of visitation to an incarcerated or institutionalized parent or guardian), and its omission of such a standard from sections 366.21, subdivision (h), and 366.22, subdivision (a), persuades us that the Legislature did not intend that the clear and convincing evidence standard of proof should apply to a finding of detriment under the latter statutes. (See *In re Marquis D., supra,* 38 Cal.App.4th at p. 1827.)

We therefore conclude the Legislature, by its enactment of the various statutes discussed above, intends that the juvenile court should apply the

preponderance of the evidence standard to adjudicate whether visitation would be detrimental to the child under sections 366.21, subdivision (h), and 366.22, subdivision (a).

B. *Constitutional guarantees of due process of law do not mandate a standard of proof higher than preponderance of the evidence*

Relying upon *Santosky v. Kramer* (1982) 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599] (hereafter *Santosky*), appellant argues that constitutional requirements of due process of law require that a finding of detriment to the child, necessary to terminate visitation, must be made by clear and convincing evidence. In *Santosky,* the Supreme Court held that due process requires that a finding of parental unfitness be supported by a minimum of clear and convincing evidence to terminate parental rights. (455 U.S. at pp. 768-770 [102 S.Ct. at pp. 1402-1404, 71 L.Ed.2d at pp. 616-617].)

In reaching its conclusion, the *Santosky* court evaluated three interests:

1. *The private interests of the parents, the child, and the foster parents.* (*Santosky, supra,* 455 U.S. at p. 759 [102 S.Ct. at pp. 1397-1398, 71 L.Ed.2d at p. 610].)

With respect to the foster parents and the child, the high court said, "at the factfinding stage of the . . . proceeding, the focus emphatically is not on them." (*Santosky, supra,* 455 U.S. at p. 759 [102 S.Ct. at p. 1398, 71 L.Ed.2d at p. 610].)

By way of contrast, the focus in the instant case is emphatically on the interests of the children. Thus, "[c]hildren, too, have fundamental rights—including the fundamental right to be protected from neglect and to 'have a placement that is stable [and] permanent.' [Citations.] Children are not simply chattels belonging to the parent, but have fundamental interests of their own that may diverge from the interests of the parent. [Citation.]" (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419 [33 Cal.Rptr.2d 85, 878 P.2d 1297].)

A child has a constitutional interest in stability. (*In re Jasmon O., supra,* 8 Cal.4th at p. 421.) The turning point at which the child's interest may outweigh that of the parent is reached no later than 18 months after the child has been removed from the parental home. (*Id.* at p. 420.)

In the instant case, the children had been removed from the parental home, and had been in foster placement, for nearly three years when the Department moved to terminate visitation. At that juncture, the interests of the

children were paramount. However, increasing the standard of proof would increase the difficulty of the Department to show detriment to the children and would therefore increase the risk of harm to them.

The private interests of appellant and the children do not weigh in favor of increasing the standard of proof.

2. *The interest in avoiding the risk of erroneous factfinding. (Santosky, supra,* 455 U.S. at p. 761 [102 S.Ct. at pp. 1398-1399, 71 L.Ed.2d at p. 612].)

With respect to this interest, the high court said: "At [the New York] proceeding, numerous factors combine to magnify the risk of erroneous factfinding. Permanent neglect proceedings employ imprecise substantive standards that leave determinations unusually open to the subjective values of the judge. [Citations.] In appraising the nature and quality of a complex series of encounters among the agency, the parents, and the child, the court possesses unusual discretion to underweigh probative facts that might favor the parent. Because parents subject to termination proceedings are often poor, uneducated, or members of minority groups [citation], such proceedings are often vulnerable to judgments based on cultural or class bias. [¶] The State's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense. No predetermined limits restrict the sums an agency may spend in prosecuting a given termination proceeding. The State's attorney usually will be expert on the issues contested and the procedures employed at the factfinding hearing, and enjoys full access to all public records concerning the family. The State may call on experts in family relations, psychology, and medicine to bolster its case. Furthermore, the primary witnesses at the hearing will be the agency's own professional caseworkers whom the State has empowered both to investigate the family situation and to testify against the parents. Indeed, because the child is already in agency custody, the State even has the power to shape the historical events that form the basis for termination. [¶] The disparity between the adversaries' litigation resources is matched by a striking asymmetry in their litigation options. Unlike criminal defendants, natural parents have no 'double jeopardy' defense against repeated state termination efforts. If the State initially fails to win termination, as New York did here, [citation], it always can try once again to cut off the parents' rights after gathering more or better evidence. Yet even when the parents have attained the level of fitness required by the State, they have no similar means by which they can forestall future termination efforts. [¶] Coupled with a 'fair preponderance of the evidence' standard, these factors create a significant prospect of erroneous termination." (*Santosky, supra,* 455 U.S. at pp. 762-764 [102 S.Ct. at pp. 1399-1400, 71 L.Ed.2d at pp. 612-613], fns. omitted.)

Some of the concerns expressed by *Santosky* arguably apply to the determination of detriment in this case, but most do not. Thus, for example, the instant determination requires satisfaction of a clear statutory legal standard: whether visitation will be detrimental to the child. This statutory rule reduces the chance that the determination will be "unusually open to the subjective values of the judge." (*Santosky, supra,* 455 U.S. at p. 762 [102 S.Ct. at p. 1399, 71 L.Ed.2d at p. 612].) Nor is the instant adjudication one in which "[t]he State's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense." (455 U.S. at p. 763 [102 S.Ct. at p. 1400, 71 L.Ed.2d at p. 613].) There is no disparity of litigation resources in this case. Nor are *Santosky*'s concerns about the "double jeopardy" aspects of repeated state termination efforts implicated here.

We therefore conclude that the interest in avoiding erroneous factfinding does not militate in favor of a higher standard of proof in this case.

3. *The parens patriae interest of the state in preserving and promoting the welfare of the child and the state's interest in reducing the cost and burden of such proceedings. (Santosky, supra,* 455 U.S. at p. 766 [102 S.Ct. at pp. 1401-1402, 71 L.Ed.2d at p. 615].)

For reasons that we have mentioned above in our discussion of the private interests of parent and child, in this case, in which the children had been in foster care almost three years, the *parens patriae* interest of the state in the welfare of the children was paramount.

With respect to the interest of the state in reducing the cost and burden of the proceedings, we do not think that, in this case, the standard of proof (whether higher or lower) would have had any measurable effect, one way or the other, on the state's interest.

We therefore conclude that the *Santosky* factors do not suggest that it would be appropriate to increase the burden upon the state to prove detriment to the child. In this case, due process does not require a higher standard of proof than that chosen by the Legislature, which has asserted its right to establish the standard of proof, attempting to balance the interests of children with that of the parents. (*In re Angelia P.* (1981) 28 Cal.3d 908, 922 [171 Cal.Rptr. 637, 623 P.2d 198].) Constitutional guarantees of due process of law did not require the juvenile court to find, by clear and convincing evidence, that visitation would be detrimental to the children. (See *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) The juvenile court did not err in finding detriment to the children by a preponderance of the evidence. (*Ibid.*)

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The order appealed from is affirmed.

Scotland, P. J., and Nicholson, J., concurred.

---

*See footnote, *ante*, page 753.