Filed 7/18/14  In re K.B. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. DEANNA B., Defendant and Appellant. | F068764 (Super. Ct. Nos. 516803, 516804, 516805) **O P I N I O N** |

## THE COURT*

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Cornell, J., and Kane, J.

Deanna B. (mother) appeals from the juvenile court's dispositional orders terminating its dependency jurisdiction as to her four-year-old daughter K.B., two-year-old daughter, J.B., and 18-month-old son, J.B., Jr. and placing them with their father Joseph B. Mother contends the juvenile court erroneously relied on Welfare and Institutions Code section 361.2[1] to support its placement order. Mother also contends the juvenile court erred in terminating its jurisdiction without determining whether the Indian Child Welfare Act (ICWA; 25 U.S.C.S. § 1901 et seq.) applied. We affirm, concluding mother forfeited the placement issue and the ICWA does not apply.

### PROCEDURAL AND FACTUAL SUMMARY

In September 2013, the Stanislaus County Community Services Agency (agency) took then four-year-old K.B., two-year-old J.B., and 15-month-old J.B., Jr. into protective custody after one of mother's guests caused an explosion and fire in her apartment while attempting to make hash oil. The agency placed the children in foster care.

Mother identified Joseph B. as the children's father, which he acknowledged. He said he did not live with mother; however, he had the children at his home for extended visits numerous times and provided financial support. He was aware mother drank alcohol and suspected she used drugs. He said he drank beer on weekends and hard liquor at celebrations. He submitted a "Parental Notification of Indian Status" (ICWA-020) indicating that he may have Indian ancestry but did not identify a tribe.

According to the agency's records, Joseph and mother were involved in a domestic violence incident in February 2012. Allegedly, Joseph slapped mother, knocking her to the floor, choked her, dragged her to the front door and told her to leave. She picked up K.B. and Joseph locked them out of the house. The agency deemed the

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

allegation inconclusive because mother could not be found and Joseph denied any physical violence.

In late September 2013, the agency filed a dependency petition as to K.B., J.B., and J.B., Jr. alleging mother's conduct brought the children within the juvenile court's jurisdiction. The agency also mailed notice of the dependency proceedings to the Department of the Interior and the Bureau of Indian Affairs as required under the ICWA.

The juvenile court ordered the children detained and set the matter for a jurisdictional/dispositional hearing (combined hearing). The agency referred Joseph and mother for parenting classes, a substance abuse assessment and services for domestic violence.

Joseph completed a substance abuse assessment and told the specialist he drank beer on the weekends and hard alcohol on special occasions. However, he tested positive for marijuana and alcohol. He admitted drinking alcohol that morning prior to his appointment. The specialist referred him for inpatient substance abuse treatment.

In October 2013, the agency filed a first amended petition adding allegations that Joseph was negligent in failing to remove the children from mother's custody despite his suspicion that she was using drugs, that he tested positive for marijuana after denying its use, and was abusive to mother during the February 2012 incident.

The agency recommended the juvenile court adjudge the children its dependents, remove them from parental custody, and provide mother and Joseph reunification services.

On October 28, 2013, the juvenile court convened the combined hearing and set it for a contested hearing on November 25, 2013. The juvenile court also ordered the agency to send out new ICWA notices.

On October 30, 2013, the agency mailed notice of the proceedings to the Department of the Interior and the Bureau of Indian Affairs.

3

On November 25, 2013, the juvenile court convened the contested combined hearing. The juvenile court found that it was unknown whether the ICWA applied. Mother's attorney made an offer of proof accepted by the parties and the juvenile court that mother objected to the juvenile court's assumption of dependency jurisdiction and believed the children's interests would be best served by returning them to her custody. However, if they could not be returned to her custody, she preferred that the agency place them with Joseph rather than in foster care. She believed that was "her best choice as a mother." Joseph's attorney also made an offer of proof that he objected to the juvenile court's assumption of jurisdiction and wanted to inform the court that he completed substance abuse treatment and was attending Alcoholics/Narcotics Anonymous meetings.

The juvenile court found that notice of the hearing was properly given and that it was unknown if the ICWA applied. The court found the allegations in the first amended petition true and adjudged the children its dependents under section 300, subdivision (b). The court also found Joseph had proven he was able to safely care for the children. Consequently, the court awarded him joint legal and sole physical custody of the children and terminated its jurisdiction over them.

This appeal ensued.

## DISCUSSION

### I. Mother Forfeited her Right to Challenge the Juvenile Court's Order Placing the Children with Joseph. Nevertheless, We Would Affirm.

Mother contends the juvenile court misapplied section 361.2[2] in granting Joseph custody of the children. Section 361.2 governs placement of a child with a noncustodial parent. Subdivision (a) of section 361.2 provides:

---

[2] The juvenile court did not cite section 361.2 as authority for placing the children with Joseph. However, section 361.2 authorizes placement with the noncustodial parent and the parties presume by their arguments that the juvenile court relied on that statute.

4

"When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

If the juvenile court places the child with a noncustodial parent, it may grant the parent legal and physical custody of the child and terminate its jurisdiction over the child, or maintain its jurisdiction and order reunification services for either or both parents. (§ 361.2, subd. (b).)

We conclude mother forfeited her right to challenge the juvenile court's placement decision by failing to challenge it at the combined hearing. As a general rule, a party who does not raise an argument below forfeits the argument on appeal. (*In re T.G.* (2013) 215 Cal.App.4th 1, 14.) In this case, mother did not object to the children's placement with Joseph. On the contrary, she agreed that it was the best solution for them. Consequently, mother not only forfeited the right to challenge the children's placement but actually consented to it. Having done so, she cannot now claim error.

However, even if mother had preserved the placement issue for our review, we would find no error. In this case, the event that brought the children within the provisions of section 300 was the explosion and fire which occurred while they were living with mother. Since the children were not living with Joseph at the time of the fire and explosion and since he requested custody, the juvenile court had no choice under section 361.2, subdivision (a) but to place them with Joseph unless it found by clear and convincing evidence doing so would be detrimental to them. In this case, the juvenile court determined that Joseph had sufficiently resolved any safety concerns and ordered the children placed in his custody.

5

Mother contends the juvenile court erred in applying section 361.2, subdivision (a) to Joseph because Joseph was an "offending" parent and the statute does not apply to an "offending" parent. Joseph was "offending," mother claims, by virtue of the allegations found true as to him in the petition and his failure to show proof he completed or participated in the services offered to him.

The word "offending" is not used in the text of section 361.2. This term first appeared in the case law in *In re Marquis D*. (1995) 38 Cal.App.4th 1813 where, in discussing section 361.2, the court used the term "offending" to refer to the custodial parent and "nonoffending" to refer to the noncustodial parent. (*In re Marquis D.*, *supra*, at p. 1823.) In subsequent decisions, the term "nonoffending noncustodial parent" became synonymous with the parent "with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300." (*In re John M*. (2013) 217 Cal.App.4th 410, 421-422 (*John M.*).)

A split of authority exists among the appellate courts as to whether a parent must be both "noncustodial" and "nonoffending" to be considered for placement under section 361.2. (See *In re A.A.* (2012) 203 Cal.App.4th 597, 608; *In re Nickolas T*. (2013) 217 Cal.App.4th 1492, 1504-1505; *John M.*, *supra*, 217 Cal.App.4th at pp. 423-424.) Mother urges this court to adopt the view that section 361.2 only applies to a noncustodial "nonoffending" parent. We decline to do so.

Even if mother had preserved the placement issue, the plain language of section 361.2, subdivision (a) is sufficiently clear as to Joseph to bring him within its provisions. We reiterate: he is a parent with whom the children were not living when the event (fire and explosion) arose that brought the children within the provisions of section 300 and he requested custody of them.

Finally, mother contends the juvenile court erred in not offering her reunification services. Had the juvenile court retained its jurisdiction it could have provided mother

reunification services under section 361.2, subdivision (b).  However, it chose to place the children with Joseph and terminate its jurisdiction which we would uphold. Consequently, we need not address whether the juvenile court abused its discretion in not ordering reunification services for mother.

**II.      The Juvenile Court did not Err in Terminating its Jurisdiction Without Determining Whether the ICWA Applies Because it Does Not.**

Mother contends the juvenile court erred in terminating jurisdiction without first determining whether the ICWA applied.  We conclude the ICWA did not apply because the children were being placed with Joseph rather than in foster care.

The purpose of the ICWA is to preserve and protect Indian children, families and tribes in the context of child dependency actions under state law.  (25 U.S.C. § 1901 et seq.)  The ICWA sets forth various procedural safeguards, including a notice requirement, to effectuate its goal.  The ICWA requires:  "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe … of the pending proceedings and of their right of intervention."  (25 U.S.C. § 1912(a).)  "One of the primary purposes of giving notice to the tribe is to enable it to determine whether the child involved in the proceedings is an Indian child."  (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1210.)

Mother does not contend the agency failed to comply with the ICWA's notice requirements.  Rather, she contends the juvenile court erred in not waiting for the responses and determining whether the ICWA applied.  We conclude the ICWA did not apply irrespective of the responses the agency's notices might elicit.

By its own terms, the ICWA notice is *only* required where the agency seeks foster care or termination of parental rights, "it does not require notice *anytime* a child of

7

possible or actual Native American descent is involved in a dependency proceeding." (*In re Alexis H*. (2005) 132 Cal.App.4th 11, 14.)

In this case, the agency sought neither foster care nor adoption for the children. Rather, the agency sought placement of the children with their noncustodial parent. Thus, the ICWA did not apply and the juvenile court did not err in terminating its jurisdiction without making an ICWA determination.

We find no error and affirm.

## DISPOSITION

The juvenile court's dispositional orders are affirmed.