Filed 4/10/15  In re Madeline C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MADELINE C., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D066800 |
| Plaintiff and Respondent, | (Super. Ct. No. J519043A-C) |
| v. | |
| REYNA M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Martindill, Referee.  Affirmed with directions.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Reyna M. appeals the juvenile court's order finding jurisdiction over her minor daughter, Victoria A., under Welfare and Institutions Code section 300, subdivision (a).[1] Reyna contends that the court's jurisdictional finding under section 300, subdivision (a) is erroneous because neither Victoria nor her half siblings were subject to physical abuse by their parents. We conclude that the juvenile court erred in finding jurisdiction under section 300, subdivision (a), but affirm the jurisdictional order with directions that the court vacate its finding under subdivision (a) and enter a new finding under subdivision (b)(1).

FACTUAL AND PROCEDURAL BACKGROUND

Reyna first came to the attention of the San Diego County Health and Human Services Agency (Agency) in 2012. This dependency case was initiated in June 2014 when Reyna called the police after Victoria's father, Victor A., threatened Reyna with physical violence, struck her in the face multiple times while she was holding Victoria (who was less than a month old at the time), and threw furniture and other possessions, including the baby's bed, around the home. Victor fled before the police arrived. Police officers observed bruising on Reyna's forehead and cheek. Reyna told the officers that she was afraid to put Victoria down during the violence because she believed that if she had done so, the beating would only get worse. The police returned to the home the following evening. Reyna told them that Victor was not home. When the officers asked for permission to enter the house to look for Victor, they discovered him hiding under a bed in a back bedroom. Victor denied hitting Reyna. When asked why he was hiding,

_____

[1]     Statutory references are to the Welfare and Institutions Code.

2

Victor told the officers that was where he slept. As a result of the incident, Victor was arrested and the Agency opened a voluntary case with the family. Reyna was provided with domestic violence services and entered into a safety plan with the Agency. The Agency advised Reyna to get a restraining order against Victor, but she did not make any effort to obtain one.

Less than two months after the June 2014 incident, Reyna took Victoria (then two months old) and Victoria's two half siblings, Kevin C. (age seven) and Madeline C. (age 11), to the Mother Child Adolescent Program at the University of California at San Diego and told the program's staff that she could not go back home. The staff referred Reyna to a domestic violence shelter, which contacted the Agency. In her interview with the Agency's social worker, Reyna stated that Victor hit her in the head while she was holding Victoria, prompting her to leave the family's home. When Reyna was referred to the shelter, she declined the housing offered and expressed anger when the staff informed her that they were required to report the incident with Victor to the Agency.

Madeline and Kevin told the social worker that after leaving the shelter, they returned home. Victor was there when they arrived. Kevin said that he had not seen Victor hit his mother, but had heard his mother screaming and crying. In addition, Kevin had seen bruises on Reyna's face and arms. Reyna told Kevin that the bruises were from cooking or from hitting herself. Kevin stated that Victoria was always with Reyna during her fights with Victor. Madeline told the social worker that she often heard Victor and her mother fighting, and heard Victor hitting her mother. Madeline worried that Victoria would be hurt during one of Victor and Reyna's fights. Madeline told the social worker

3

that when they came back to the family's home after leaving the shelter, the home "was a big mess and there was stuff thrown everywhere."

During her interview with the Agency's social worker the day after she and the children left the shelter, Reyna maintained that the incident between her and Victor had been simply a misunderstanding, and claimed that she had not seen Victor for several days. Reyna told the social worker that she had gone to the shelter because she could not pay her rent, and that the shelter had turned her away because it did not have any room available. When the social worker challenged Reyna's story, Reyna did not admit to any domestic violence between her and Victor.

In August 2014, the Agency filed petitions on behalf of Victoria under section 300, subdivision (a) and on behalf of Kevin and Madeline under section 300, subdivision (b)(1). With respect to Victoria, the petition alleged that "the child's parents periodically exposed the child to the risk of serious physical harm in that the child was exposed to violent confrontations in the family home between the mother and father . . . involving the use of physical force to wit: [Victor] hitting [Reyna] multiple times while she held the infant child. Further, [Victor and Reyna] have struggled over the child multiple times and the mother denies and/or minimizes the seriousness of their domestic violence and remains with [Victor], and there is a substantial risk the child will suffer serious physical harm inflicted [nonaccidentally]."

At the detention hearing on the petitions, Kevin and Madeline were placed with their father and Victoria was detained in a licensed foster home. The court ordered separate visitation with Victoria for Reyna and Victor. In addition, both Reyna and

4

Victor were offered voluntary reunification services. At the initial jurisdiction and disposition hearing, Reyna and Victor disputed the allegations of the petitions and set the matter for trial. Between the time of the detention hearing and the jurisdiction and disposition hearing, Reyna began participating in some services, including a domestic violence support group, and regularly visited the minors. She moved out of the home and was renting a room from a friend, but failed to comply with the Agency's request that she provide the names of her roommates so that the Agency could perform required background checks. Victor did not communicate with the Agency or participate in any services in this time frame and Victoria's foster parent reported Victor's visits with Victoria were inconsistent.

At the contested jurisdiction and disposition hearing, the juvenile court admitted the Agency's reports into the record and heard the testimony of the family's social worker, who testified about her interviews with the minors concerning domestic violence between Reyna and Victor. The social worker stated that she was concerned that Reyna would continue her relationship with Victor because Reyna had not obtained a restraining order and had violated the earlier voluntary safety plan that she had agreed to with the Agency.

Reyna's counsel argued that the Agency had not established jurisdiction over any of the minors or, in the alternative, that the petitions should be amended to assert jurisdiction under section 300, subdivision (b)(1) as to Victoria and subdivision (j) as to Madeline and Kevin. The Agency's counsel maintained that jurisdiction over Victoria under section 300, subdivision (a) was appropriate because when Reyna was attacked by Victor, Reyna refused to put Victoria down so that the beating would not be worse,

5

thereby jeopardizing the safety of two-month-old Victoria. The juvenile court found by clear and convincing evidence that Victoria was a child described by section 300, subdivision (a) and that her half siblings were children described by subdivision (b)(1).

The juvenile court ordered all three minors removed from Reyna's custody, finding by clear and convincing evidence that removal of all three children was appropriate under section 361, subdivision (c)(1) because there was a substantial danger to their physical health and emotional well-being, and that there was no reasonable means to protect them without removal. The court also removed Victoria from Victor's custody. Madeline and Kevin were placed with their father and Victoria was placed in a licensed foster home. The court ordered continued reunification services for Reyna and Victor in accordance with the case plan, and ordered that visitation with Victoria be supervised.

DISCUSSION

Reyna appeals only the juvenile court's jurisdictional finding over Victoria under section 300, subdivision (a). She contends that the evidence before the court does not support this finding because neither Victoria nor her half siblings has suffered physical harm inflicted nonaccidentally by a parent or guardian, and there is no evidence to support a finding that Victoria was at substantial risk of physical harm inflicted nonaccidentally by a parent, within the meaning of the statute. Reyna asserts that this error was prejudicial because the court's finding under section 300, subdivision (a) will follow Reyna throughout this dependency proceeding, jeopardizing her chances at reunification with Victoria.

6

Reyna acknowledges that her case "did involve domestic violence in the presence of [Victoria], an allegation covered by . . . section 300, sub[division] (b)." She asks this court to reverse the jurisdictional finding and remand the case for consideration under section 300, subdivision (b)(1).

A

We review the court's jurisdictional findings for substantial evidence. (*In re David M.* (2005) 134 Cal.App.4th 822, 828.) Under this standard, we consider the entire record to determine whether the evidence is " ' "reasonable, credible, and of solid value." ' " (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.) We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence, or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53; *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.) Substantial evidence is not synonymous with any evidence. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) The ultimate test is whether, considering the entire record, a reasonable trier of fact would make the challenged ruling. (*Id*. at pp. 1393-1394; accord *In re David M.,* at p. 828.)

To the extent that Reyna asserts that section 300, subdivision (a), by its terms, does not support jurisdiction, that question is one of law that we review de novo. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598 (*Giovanni F.*).)

7

B

Section 300, subdivision (a) authorizes the juvenile court to adjudge a minor a dependent child of the court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."  (§ 300, subd. (a).)  The provision specifies, "For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm."  (*Ibid*.)

As noted, the " 'interpretation of a statute is a question of law that we review independently.' [Citation.] ' "The rules governing statutory construction are well established.  Our objective is to ascertain and effectuate legislative intent.  [Citations.]" [Citation.]  In determining legislative intent, we first look to the statutory language itself.  [Citation.]  "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." ' "  (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 725 (*Marquis H.*).)

C

Reyna asserts that section 300, subdivision (a) does not apply to Victoria because there is no evidence of a substantial risk of serious future injury to Victoria "based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by

8

the parent or guardian which indicate the child is at risk of serious physical harm."

(§ 300, subd. (a).) The Agency concedes that there is no evidence of purposeful abuse of Victoria or her half siblings by Reyna or Victor, but citing this court's decision in *Marquis H*., argues that the statute does not require that the child fall under one of the three specific scenarios described by the second sentence of section 300, subdivision (a). Rather, the Agency asserts, "[T]he permissive language of the second sentence merely sets forth scenarios in which the statute may apply. '[T]he Legislature could not be expected to foresee and codify every mode of physical abuse which may place a child at substantive risk of physical harm by an abusive parent.' " (*Marquis H*., *supra*, 212 Cal.App.4th at p. 725.)

Reyna contends that the plain language of section 300, subdivision (a) precludes a finding of jurisdiction and that *Marquis H*. and another case the Agency relies on, *Giovanni F*., are distinguishable. We agree with Reyna on these points. Section 300, subdivision (a) allows a finding of jurisdiction when the child has suffered physical harm inflicted nonaccidentially by the parent, or if there is a substantial risk of such harm. The provision clearly specifies the three circumstances under which the juvenile court may find that a substantial risk of such harm exists, stating, "For the purposes of this subdivision," a court may find future substantial risk of nonaccidental physical harm based on "the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these *and* other actions by the parent or guardian which indicate" the risk of serious physical harm. (*Ibid*., italics added; see *In re Isabella F*. (2014) 226 Cal.App.4th 128, 139 [concluding

9

single incident of scratching daughter insufficient to support finding of substantial risk of future physical harm].)

The Agency does not dispute that no nonaccidental physical harm has been inflicted on Victoria, that there is no history of repeated inflictions of injury on Victoria or her older half siblings, and that there is no combination of these scenarios and other actions by Victor and Reyna indicating a risk of physical abuse. However, relying on *Marquis H.* and *Giovanni F.*, the Agency asserts that section 300, subdivision (a) "does not require a child to fall under one of only three scenarios to qualify for juvenile court jurisdiction. . . ." Instead, the Agency contends, the statutory language merely provides "examples of a multitude of factual scenarios which *may* allow a juvenile court to conclude a child is at substantial risk of serious future injury."

In *Marquis H.* this court affirmed the finding of jurisdiction over the child under section 300, subdivision (a) where the parents had severely physically abused their two grandchildren, who were also in their custody. (*Marquis H.*, *supra*, 212 Cal.App.4th at pp. 720-721.) The abuse inflicted by the grandparents included burning the children with an iron and hitting them repeatedly with bats, electrical cords, belts, brooms, and crutches. (*Id.* at pp. 721-722.) On appeal, the parents maintained that jurisdiction over their own son under section 300, subdivision (a) was not appropriate because the statute refers only to abuse of the "child or the child's siblings" and the children they abused were not the biological siblings of their son. (*Marquis H.*, at p. 725.) The court rejected this argument, stating that section 300, subdivision (a) does not prohibit the juvenile court's "exercise of jurisdiction in situations other than those specified in the second

10

sentence of the statute." (*Marquis H.*, at p. 725.) In holding that the provision was applicable to the facts before it, the court further stated "[T]he permissive language of the second sentence merely sets forth scenarios in which the statute may apply." (*Ibid*.)

The decision in *Marquis H.* corresponds to the statutory purpose of section 300, subdivision (a) of asserting jurisdiction over children who are physically abused by their parents. As Reyna points out, the application of subdivision (a) was appropriate in *Marquis H.* because the parents' severe physical abuse of their grandchildren was equivalent to the abuse of a sibling. Although the *Marquis H.* decision contains the broad language quoted above, that language was not essential to its holding that subdivision (a) applied to the facts before it. Indeed, *Marquis H.* referred specifically to physical abuse by a parent of his or her children. (See *Marquis H.*, *supra*, 212 Cal.App.4th. at p. 725 [" 'the Legislature could not be expected to foresee and codify every mode of physical abuse which may place a child at substantive risk of *physical harm by an abusive parent*' "], italics added.) Unlike *Marquis H.*, where the direct physical abuse of children in the position of siblings to the minor warranted the application of section 300, subdivision (a), there is no evidence that either Victoria or her half siblings have been physically abused.

As Reyna acknowledges, and as her trial counsel suggested at the jurisdiction and disposition hearing, section 300, subdivision (b)(1) is the appropriate provision under which to assert jurisdiction over Victoria. Section 300, subdivision (b)(1) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to

11

adequately supervise or protect the child or provide adequate medical treatment.[2]  This subdivision is routinely applied in cases involving domestic violence.  (See *In re T.V.* (2013) 217 Cal.App.4th 126, 134 ["Exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b)."]; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193-194 [same].)

The Agency argues that *Giovanni F.* warrants the application of section 300, subdivision (a) in this case.  In *Giovanni F.*, the father, Joel, was driving the mother and their infant son, Giovanni, when Joel repeatedly punched the mother in the face and then strangled her with his right hand until she lost consciousness.  (*Giovanni F.*, *supra*, 184 Cal.App.4th at p. 600.)  Once Joel reached his destination, the mother regained consciousness.  She and Joel struggled over the car seat while Giovanni was in it, and the car seat hit a window, cracking the glass.  (*Ibid.*)  On appeal, this court affirmed the juvenile court's finding under section 300, subdivision (a), concluding that the "horrendous violence" by Joel supported that finding.  (*Giovanni F.*, at p. 599.)

As in *Giovanni F.*, the physical violence that occurred in this case between Victor and Reyna while Reyna was holding Victoria is serious, and undoubtedly placed Victoria

---

2     Section 300, subdivision (b)(1) states that the juvenile court is authorized to take jurisdiction when "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

in harm's way.  However, as the Agency concedes, there was no evidence showing that Victoria or her half siblings were physically abused by Victor or Reyna.  In our view, section 300, subdivision (a) requires such evidence as a necessary precursor to a jurisdictional finding.  To the extent that *Giovanni F.* concluded that jurisdiction under section 300, subdivision (a) is appropriate in the absence of actual physical abuse by the parent of the child or her siblings, we disagree.[3]

D

Although we conclude that the juvenile court's jurisdictional finding under section 300, subdivision (a) is not supported by sufficient evidence, an unqualified reversal is not warranted under the circumstances of this case.  Reyna explicitly acknowledges that Victor engaged in domestic violence directed at Reyna while she was holding Victoria, and that this fact would support a jurisdictional finding under section 300, subdivision (b)(1).

Further, the Agency's petitions on behalf of Victoria's half-siblings and the juvenile court's jurisdictional findings pertaining to Madeline and Kevin under subdivision (b)(1) are based on the same underlying factual allegations concerning domestic violence between Reyna and Victor.  Reyna makes no assertion that the record does not support the court's jurisdictional findings for Madeline and Kevin.  Because

---

[3]     *Giovanni F.* cited *In re James R.* (2009) 176 Cal.App.4th 129 for the proposition that jurisdiction could be found without actual harm to the child (or siblings).  However, as Reyna points out, *In re James R.* reversed a jurisdictional finding under section 300, subdivision (b) based on the mother's mental illness and substance abuse, and the father's inability to protect the children.  *In re James R.* did not address the requisite showing under section 300, subdivision (a).  (*In re James R.,* at p. 131.)

13

Reyna was holding Victoria while Reyna was engaged in physical altercations with Victor, Victoria was placed at an even greater risk of serious physical harm than were the older children as result of Reyna's failure to protect.[4] The court's factual findings that led to its jurisdictional finding under section 300, subdivision (a) also support jurisdiction of Victoria under subdivision (b)(1).

## DISPOSITION

The jurisdictional order is affirmed. The juvenile court is directed to vacate its finding of jurisdiction under section 300, subdivision (a) and to interlineate the petition filed on behalf of Victoria to include an allegation under section 300, subdivision (b)(1). The court shall enter a new jurisdictional finding under that provision.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.

---

4     The cases Reyna relies on to support her contention that an unqualified reversal is required do not in fact mandate that result. In *In re Marquis D.* (1995) 38 Cal.App.4th 1813, the court declined to imply a finding of detriment under section 361.2 to placing the minor with a noncustodial parent where there was no indication in the record that the juvenile court had even considered placement with the noncustodial parent. (*Id.* at p. 1830; see also *In re V.F.* (2007) 157 Cal.App.4th 962, 966 [following *In re Marquis D.* and remanding case for analysis of detriment to placement with noncustodial parent where trial court failed to consider placement at all].) Here, the juvenile court's factual findings both with respect to Victoria and her half siblings support a jurisdictional finding under section 300, subdivision (b)(1). (See, e.g., *In re Andrea G.* (1990) 221 Cal.App.3d 547, 554 [implying factual finding that there was not a substantial probability of reunification within six months based on clear record in the juvenile court].)

14